T. D. DOWNING & CO. ET AL. *v.* UNITED STATES (NO. 3069[1])

United States Court of Customs Appeals, June 12, 1928

*Frank P. Wilson* (*Bert Hanson* of counsel) for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*Oscar Igstaedter* and *John F. Kavanagh*, special attorneys, of counsel), for the United States.
*Lamb & Lerch* (*John G. Lerch* of counsel) *amici curiæ.*

[Oral argument May 11, 1928, by Mr. Hanson, Mr. Igstaedter, and Mr. Lerch]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The case at bar involves the reappraisement of two shipments of Pine Brand cotton crêpe, imported from Japan, the first importation being made on October 10, 1922, and the second on November 7, 1924. The first shipment was appraised by the local appraiser at "Yen per piece 9.25 plus 7% Japanese home consumption tax. Add cases, packing, etc." The second importation was entered by a duress entry under section 489 of the Tariff Act of 1922, and was appraised by the local appraiser at "Yen per piece 10.20. Add 46 sen per piece (tax). Add packing."

The importer appealed to reappraisement by a single general appraiser, and for a review by the Board of General Appraisers in both instances, the appraised value being in each instance affirmed. Thereupon the importer appealed to this court. This court, in *Downing & Co.* v. *United States*, 15 Ct. Cust. Appls. 235, T. D. 42243, reversed the judgment of the court below and remanded the cause with directions to make a finding of facts upon which its opinion was based, and to give the reasons therefor, all as provided by section 501 of the Tariff Act of 1922. In the opinion of the court, delivered by Bland, J., and which opinion had the unanimous approval of the judges of this court, certain items were enumerated upon which a finding of fact seemed essential, if this court were to review the case on matters of law only, as the statute provides. These items were: First. The appraised unit value. Second. A finding as to the existence or nonexistence of a foreign value and an export value, and which value is adopted, and the reasons therefor. Third. As to the existence of a Japanese consumption tax, the amount of same, and its application to the importations under question. Fourth. The cost of containers, coverings, packing, etc.

The Customs Court have now, in attempted conformity with the mandate of this court, made a finding of facts and the case is again returned to us for consideration. That finding of facts is as follows:

1. This is an importation of colored cotton crêpe from Japan.

2. There are two reappraisements involved, one exported in October, 1922, and the other in October, 1924. The importation of 1922 was entered at 9.25

yen per piece, being the unit of the shipment. It was invoiced at 10.20 yen per piece. The appraised value was found to be 9.25 yen per piece plus 7 per cent as tax. The importation made in 1924 was entered at 10.50 yen per piece with an addition of 46 sen per piece as tax. This entry was made to meet advances. The invoice price was 10.20 yen per piece and the appraised value was 10.20 with an addition of 46 sen per piece as tax.

3. They were entered plus packing and appraised plus packing. We therefore find that the value of the packing is as set forth in the invoice.

4. We further find that there was a wholesale market in Japan for this class of merchandise at the time of these shipments and that the foreign market value or price at the time of exportation of such merchandise to the United States at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Japan, in the usual wholesale quantities and in the ordinary course of trade, was as follows: In reappraisement 12770–A, 9.25 yen per piece plus 7 per centum, home consumption tax; in reappraisement 40851–A, 10.20 yen per piece plus 46 sen per piece tax, which is known as a consumption tax. To this are to be added packing charges in each case as set forth in the invoices and approved by the local appraiser and the justice below.

It will be noted that the entry by the importer is on the theory that the export price should govern in these cases and therefore that the tax should not be added. We find from the record of the case that the importation and the assessment of duty should be under paragraph (b) of section 401 of the tariff law of 1922 and we find that it should not be under paragraph (c) thereof. In finding as we do that the commodity is dutiable under the provisions of paragraph (b) supra, we base our decision upon the following facts: It was shown by the record that there was a market price or value in Japan as defined by the language of the statute and in finding that the export price should not be taken as a basis for the assessment of value we conclude that the finding under paragraph (b) supra, negatives any finding as suggested under paragraph (c) supra.

5. We find there was a tax which should be levied in Japan which fact is not disputed by the importer but rather is admitted. The amount of the tax, however, we think is shown by the evidence in the case to have been 7 per centum in the case of reappraisement 12770–A and 46 sen per piece in reappraisement 40851–A. This finding is in accordance with the finding of the local appraiser which stands unchallenged by any competent evidence and also is the finding of the associate justice below which stands unchallenged by any specific testimony with reference to either the fact that the tax existed or the amount of the tax levied in the appraisal by the local appraiser which we have always understood was presumptively correct until the presumption was overcome.

Let judgment be entered accordingly.

WAITE, J.

I concur in result.

YOUNG, *Justice.*

It is claimed by the appellants that there is here no such finding of facts as the statute (sec. 501) directs. We are of opinion that the special concurrence of Justice Young in this case should be considered as a concurrence in the findings of fact stated in the majority opinion. The "result" is not only a judgment of affirmance, but also a finding of facts, as the statute directs. We have no such case here as was presented in *United States* v. *Iwai & Co.*, 16 Ct. Cust. Appls. —, T. D. 42720. There it was manifest, from the three opinions filed, that no two of the justices agreed upon any findings of fact in the case. In addition, it is argued that the Customs Court has failed

to comply with the mandate of this court in that it has not made findings on the items indicated. It is obvious that this is true as to the second item. The Customs Court, speaking through Waite, J., has entirely failed to appreciate the force of our suggestion that in its finding of facts it report whether the imported goods had an export value, whether they had a foreign value, if they had both, which was the higher, and if only one, which value it was, and what it was. This failure to comply with the mandate of this court apparently arises from a misconception of the law. The opinion states, as appears from the above quotation therefrom, that the foreign value is found to be the dutiable value because: "We conclude that the finding under paragraph (b) supra, *negatives any finding as suggested under paragraph* (c) supra." (The italics are not quoted.)

Such a conclusion, of course, leaves out of consideration the plain language of the statute (sec. 402 (a), Tariff Act of 1922):

SEC. 402. VALUE.—(a) For the purposes of this act the value of imported merchandise shall be—

(1) The foreign value or the export value, whichever is higher.

The fact that there may be a foreign value does not at all negative the existence of an export value. There may be, and often are, both. It is only when the foreign value alone exists, or where it is higher than export value, that it is to be taken as the dutiable value.

The statute restricts this court, in reappraisement matters, to a consideration of questions of law only. Sec. 501, Tariff Act of 1922. We have adopted what we believe to be the proper rule, that on controverted questions of fact the judgment of the Customs Court will be sustained if there be any substantial evidence in support thereof. *Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373, T. D. 41318; *Metz & Co.* v. *United States*, 13 Ct. Cust. Appls. 412, T. D. 41340. When there is no such substantial evidence, it becomes matter of law. This court will, therefore, be prevented from performing its statutory function as a reviewing court in such cases if findings of essential fact are not made by the court below. It follows that in all cases of reappraisement the interests of the Government and the importers alike will be best served, and the litigation expedited, by a careful observance by the court below of the statutory mandate to find essential facts.

Irrespective of what has been said, however, we are not disposed to again remand this cause for further findings of fact. One of these matters has been pending for approximately six and the other for approximately four years. In such case, there should be an end to the litigation. In *Draeger Shipping Co.* v. *United States*, 15 Ct. Cust. Appls. 454, T. D. 42644, we had a similar condition, and we said:

In view of the history of this case and the record therein, we think the interests of justice will be promoted by a decision on the merits instead of awaiting the result of a remand for further finding.

That suggestion is equally applicable here. We shall, therefore, examine the record to ascertain if there is any substantial evidence therein to sustain the judgment. The judgment amounts to a finding that the foreign value of the goods imported is their dutiable value, that such foreign value is higher than any export value, and that such foreign value for reappraisement No. 12770–A was 9.25 yen per piece, plus 7 per centum Japanese home consumption tax, plus charges, and for reappraisement No. 40851–A was 10.20 yen per piece, plus 46 sen Japanese tax, plus charges.

While there are statements in the evidence of Ernest C. Sealey and K. Nonaka that occasionally goods the same brand as that imported are sold in Japan, but not in wholesale quantities, the judgment below must be affirmed, if at all, upon the reports of the customs representative, M. R. Nicholson, and the assistant customs attaché, Martin G. Scott, which appear in the record.

It appears from the record, generally, that the imported crêpe is 30 inches in width, and is known as the "Matsu" Pine Brand. It is also shown that this particular trade name is not applied to any one quality, but is a term applied to a certain class of goods, most of which are manufactured in Sano and Ashikaga. There are, however, cotton crêpes designated by the trade as Pine Brand, which are made in other parts of Japan.

Nicholson stated that he had interviewed certain Japanese merchants in Japan, particularly Mr. Murata, Mr. Katsukura, Mr. Shimazawa, and Mr. Yasuda, all of whom dealt largely in cotton crêpes for home consumption in Japan. The first two named informed him, so he states, that they sold the 30-inch crêpes of "export weave" in large quantities in Japan. Shimazawa stated that he sold in Japan all qualities of 30-inch crêpe in large quantities. The same was stated by Yasuda. Some of these merchants also exhibited samples of the same to the customs representative, taken from their respective stores.

Assistant Customs Attaché Scott, in his report to the Treasury Department, makes the following statement:

However, for the purpose of this investigation, it is not necessary to establish a market for comparable merchandise, as "Matsu" Pine Brand crêpes, produced in Sano and Ashikaga, are themselves sold to the home market through wholesalers in Tokyo, Osaka, and other points, buying direct from the weaving district. Among such dealers in Osaka are:

Wadayasu Menpu Goshi Kaisha, No. 9, Bingo Machi, 1-chome, Higashi-Ku.
Marutame Goshi Kaisha, No. 19, Hon. Machi, 2-chome, Higashi-Ku.
Takisada Gomei Kaisha, No. 21, Azuchi Machi, 2-chome, Higashi-Ku.

These three firms were visited August 23d. At the Wadayasu Kaisha, we were informed that their dealings in these crêpes were irregular, as they were now handling mostly Osaka crêpes. That they could show us no records of their sales of such crêpes, but that they could state definitely that the home-market price was always higher by 46 sen, the amount of the Japanese consumption tax. At Marutame Goshi Kaisha's we were informed that they did handle Matsu (Pine) crêpes from Sano and Ashikaga, but did not feel at liberty to show us their records concerning same.

Takisada Gomei Kaisha were then visited, and their assistant sales manager, Mr. Ogawa, interviewed. Mr. Ogawa was persuaded to produce his records, showing his purchase prices for Pine Brand crêpe for the months of March, April, May, and June of the present year. From these records, the following purchase prices, covering actual transactions, were secured:

March 26, 1925, at ¥5.30 per piece of 20 yds.
April 9,      "   "   5.10      "      "
April 9,      "   "   5.10      "      "
April 16,     "   "   4.90      "      "
May 7,        "   "   4.70      "      "
May 18,       "   "   4.50      "      "
May 25,       "   "   4.37      "      "
June 8,       "   "   4.68      "      "
June 22,      "   "   4.70      "      "

Mr. Ogawa stated that they bought direct from both Sano and Ashikaga, and that their purchase prices always included the Japanese consumption tax, which was paid by the weavers. That their sales were practically all to the country districts outside of Osaka, and that their purchases amounted to about 30,000 pieces of 20 yards Pine Brand crêpe per year. Mr. Ogawa further stated that they were one of the largest wholesalers of cotton goods in Osaka, and had been engaged in that business for over 20 years, selling exclusively to the domestic market.

The customs attaché then proceeds, in his report, to give itemized statements of purchases made by the Nanri Trading Co. of Pine Brand crêpe, further verifying the statements he has theretofore made. No objection was made to the introduction of the reports of such consular attaché and customs representative, but it is claimed that they are largely hearsay, and are therefore not "substantial evidence" of the facts therein stated. Section 501 of the Tariff Act of 1922 provides, in part, as follows:

In finding such value affidavits of persons whose attendance can not reasonably be had, price lists, catalogues, reports or depositions of consuls, special agents, collectors, appraisers, assistant appraisers, examiners, and other officers of the Government may be considered. Copies of official documents, when certified by an official duly authorized by the Secretary of the Treasury, may be admitted in evidence with the same force and effect as original documents.

This statute gives an evidentiary character to many things which would not be so classed in ordinary judicial proceedings. This is made necessary by the impracticability of obtaining evidence in customs matters, in the ordinary way. In international commercial intercourse the Government and the importers would both find themselves, oftentimes, unable to make their proofs according to the laws of our country. Therefore, to facilitate commerce and the collection of customs duties, the Congress has greatly liberalized the rules of evidence applicable in such cases. The reports of consular or customs representatives in foreign countries must, necessarily, largely violate the ordinary rule against hearsay evidence. But this does not make them inadmissible. If they are relevant, they are admissible. *United States* v. *Cabrera Bros.*, 13 Ct. Cust. Appls. 82,

T. D. 40936. The weight to be given to such items of evidence is a matter exclusively for the trial court, and this court will not attempt, upon appeal to it, to interfere with the free exercise of such discretionary power. If, in any case, the Customs Court should render its judgment upon evidence which, as a matter of law we might say was not substantial, it would not only be the function, but also the duty of this court to correct such error.

But no such difficulty confronts us here. The report hereinbefore referred to shows that the identical goods here imported were on or about the date of exportation bought and sold in the usual wholesale quantities in Japan for domestic use and that these representatives had inspected the books of Japanese merchants and verified such facts. These facts are relevant and constitute, in our opinion, substantial evidence in support of the judgment of the court below wherein a foreign value is held to be established.

The remaining inquiry relates to the amount of such foreign value. Admittedly the goods had an export value, the importer contending and the Government admitting that such value is the invoice value. Special Agent Nicholson, in reciting a conversation with a merchant by the name of Yasuda, states he was told that "they purchased their crêpe in the market from brokers at a price including consumption tax and that said tax was paid by the sellers and that the price for domestic use was higher than the prices for similar goods for export by approximately the amount of the consumption tax." Attaché Scott, in his report heretofore quoted, states "that the home-market price was always higher by 46 sen, the amount of the Japanese consumption tax." George B. Spain, in an affidavit offered by the importer, states that the only Pine Brand crêpes used in Japan are such as are rejected as unfit for export. But he states further:

Should any of these rejected goods be used in Japan, there would be paid by the consumer a textile tax which would be 10 per centum of a value fixed by the Internal Revenue District. The value upon which the 10 per centum is taken is never equal to one-half of the export price and is usually fixed at so many sen per piece.

In the matter of reappraisement No. 12770–A the goods were entered at 9.25 yen per piece, and appraised by the local appraiser at the same figure, "plus 7 per centum Japanese home consumption tax." C. J. Ladue, the examiner, called as a witness and examined in chief by the importer, testified that he had information to the effect that the price for export was 9.25 yen per piece, and that the price for home consumption was 9.25 yen per piece, plus a consumption tax of 7 per centum. Nowhere is there anything in the record to contradict or impeach this statement or alter these values. They are, therefore, sufficient upon which to establish a dutiable value.

In reappraisement No. 40851-A the goods were invoiced at 10.20 yen per piece, and were appraised at the same figure, plus a consumption tax of 46 sen per piece, to make dutiable value. The testimony of Ladue shows that this was the export value of the goods when imported into this country. The report of Customs Attaché Scott, heretofore quoted, shows that the foreign value was the export value, plus 46 sen per piece. Nowhere in the record does either party attempt to impeach or contradict such values. They may, therefore, be taken as established by substantial evidence, not only of the unit price of the goods but of the amount of the consumption tax.

These facts, therefore, being established by substantial evidence appearing in the record, it follows that the judgment of the Customs Court, approving a dutiable value of 9.25 yen per piece, plus 7 per centum consumption tax, plus dutiable charges, in reappraisement No. 12770-A, and of 10.20 yen per piece, plus 46 sen per piece, consumption tax, plus dutiable charges, in reappraisement No. 40851-A, should be affirmed.

It is argued by appellant that the local appraiser ascertained the dutiable value by adding the consumption tax to the amount of export value, and that such an appraisement is invalid, under the rule announced in *International Sales Co. v. United States*, 12 Ct. Cust. Appls. 506, T. D. 40699. The record does not sustain this argument. On the authority of the case just cited and *United States v. Passavant*, 169 U. S. 16, the home consumption tax was a proper element to be considered in estimating foreign value.

In the fifth finding of fact by the court below Mr. Justice Waite states:

This finding is in accordance with the finding of the local appraiser which stands unchallenged by any competent evidence and also is the finding of the associate justice below which stands unchallenged by any specific testimony with reference to either the fact that the tax existed or the amount of the tax levied in the appraisal by the local appraiser which we have always understood was presumptively correct until the presumption was overcome.

The conclusion we have reached herein should not be taken as an affirmance of the doctrine so announced. We have, on frequent occasions, called attention to the rule that in appeals for reappraisement, under the Tariff Act of 1922, no presumption of the correctness of the appraiser's return obtains in the trial before the single justice, but that such trial is *de novo*. *Johnson Co. v. United States*, 13 Ct. Cust. Appls. 373, T. D. 41318; *Unitid States v. Tadross*, 14 Ct. Cust. Appls. 10, T. D. 41528; *United States v. Tower & Sons*, 15 Ct. Cust. Appls. 83, T. D. 42158; *Downing & Co. v. United States, supra*.

The judgment of the customs court is *affirmed*.