UNITED STATES *v.* BALDWIN UNIVERSAL Co. (No. 3376) [1]

---

United States Court of Customs and Patent Appeals, January 28, 1931

*Charles D. Lawrence*, Assistant Attorney General (*Lyman Ward* and *Hugo P. Geisler*, special attorneys, of counsel), for the United States.

B. A. *Levett* for appellee.

[Oral argument December 9, 1930, by Mr. Lawrence and Mr. Levett]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal by the United States from a judgment of the United States Customs Court in reappraisements Nos. 63510-A, 63514-A, 63527-A, and 63528-A.

The merchandise involved consists of perfumery and toilet preparations exported from France in May and June, 1926.

The importer in interest is the Guerlain Perfumery Corp. of New York, appellee being its agent. The manufacturer and seller of the merchandise was the firm of "Guerlain" of Paris. From a statement in one of the exhibits in evidence it appears that the said corporation is completely independent of said firm of "Guerlain" of Paris.

The merchandise was appraised at the port of New York at its entered value, and the collector appealed to reappraisement.

The only evidence in the case is that of a report made by one Martin Vachon, a special agent of the United States Treasury Department in Paris, dated February 4, 1927, and the oral testimony of the examiner who appraised the merchandise here involved. It is conceded that the testimony of this witness is not material to the questions raised by this appeal.

The case was heard by Judge McClelland, sitting in reappraisement. The Government contended that the merchandise should have been appraised at its foreign market value, based upon a price list of the firm of Guerlain of Paris, dated April 15, 1926, said price list being Exhibit 2 in the report of said special agent Vachon. Judge McClelland sustained the claim of the Government and the importer appealed to the United States Customs Court. Upon this appeal, the case was reversed and remanded for further proceedings pursuant to a stipulation entered into between the parties. Thereafter, Judge McClelland again decided the case in favor of the Government, and appellee here again took an appeal to the United States Customs Court, which court reversed the judgment of Judge McClelland and found that the foreign value of the merchandise was the value found by the appraiser upon appraisement, Judge Waite dissenting. The

Customs Court duly entered judgment in accordance with this finding and it is from this judgment that the Government appeals.

As heretofore stated, the material evidence in the case consists of the report of said special agent Vachon. In this report the following statements are found:

Both Mr. Pierre Guerlain and Mr. Raymond Guerlain stated that Guer·ain of Paris, France, sells this merchandise at wholesale for home consumption. In August, 1925, Guerlain issued a wholesale price list for consumption in the home market, one copy of which (the only one available) is enclosed herewith, marked Exhibit No. 1. Prices in Exhibit No. 1 are to be majorated 15 per centum, said majoration being in force since March 1, 1924. These prices remained in force until April 14, 1926.

On April 15, 1926, a new price list was issued for home consumption, one copy of which (the only one available) is enclosed herewith, marked Exhibit No. 2. Prices on Exhibit No. 2 include the majoration above mentioned. These prices remained in force until November 14, 1926. On August 1, 1926, another majoration of 15 per centum became effective and remained in force until November 14, 1926.

On November 15, 1926, a new price list was published for home consumption, six copies of which are enclosed herewith, marked Exhibit No. 3. Prices on Exhibit No. 3 include the majoration. Said prices became effective for all orders from November 16, 1926, and are still in force.

*Prices for Export to the United States.*

Prices shown in Exhibits Nos. 1, 2, and 3 are the same for export to the United States as for home consumption.

\*　　\*　　\*　　\*　　\*　　\*　　\*

SUMMARY

This investigation discloses:

1. That prices and conditions are the same for home consumption as for export to the United States.

2. \* \* \* *He* [Mr. Guerlain] *admitted that certain shipments made after price lists were modified were invoiced at the old prices for shipments covered by old orders.* This was the case for instance in consular invoices Nos. 16594, 17651, 18909, 20014, and 21337, certified at Paris, April 23, April 30, May 10, May 17, and May 25, respectively, on which prices were declared according to price list Exhibit No. 1 of August, 1925, while a new price list had been established on April 15, 1926 (Exhibit No. 2). [Italics quoted.]

The price lists referred to in the report are attached thereto, and, as stated in the report, Exhibit 1 is the price list of August, 1925, Exhibit 2 is the price list of April 15, 1926, and Exhibit 3 is the price list of November 15, 1926.

Upon the front page of the price list marked Exhibit No. 2 there appears a statement in the French language, the English translation thereof being as follows:

Received the list of new prices to be observed the 15th April, 1926, which we accept for all our orders past and future.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Detach this receipt and return to us, otherwise orders will be canceled.

There is also attached to the report six copies of invoices of sales of merchandise like that here involved, made by the Guerlain of Paris firm in France. The first is dated April 10, 1926, and the prices noted thereon are the prices found in the price list of August, 1925, Exhibit 1. The second is dated April 27, 1926, and the prices noted thereon are likewise the same as the prices stated in said Exhibit 1. The third invoice is dated July 8, 1926, covering a very small quantity of merchandise, and the prices noted thereon are the same as the prices upon the same articles found in the price list of April 15, 1926, Exhibit 2. The fourth invoice is dated August 28, 1926, and the prices stated thereon are the same as those stated in Exhibit 2, although the special agent reports that on August 1, 1926, there was an advance of 15 per centum over the price list of April 15, 1926, Exhibit 2. The next invoice is dated October 13, 1926, and the prices shown thereon are the prices shown in Exhibit 2 plus 15 per centum. The last invoice included in the report is dated December 4, 1926, and the prices named thereon are the same as the prices shown in Exhibit 2, plus 15 per centum.

It is elementary that in reappraisement cases this court has no authority to pass on the weight of evidence, but is limited to the consideration of questions of law only.

It is likewise well established that it is the duty of the Customs Court, upon appeal from a judgment of a single judge sitting in reappraisement, to pass upon the appraisement made by the single judge and determine whether such appraisement was made in accordance with the weight of the evidence. *May Co. et al.* v. *United States,* 17 C. C. P. A. (Customs) 190, T. D. 43644.

If the lower court performs this duty, and if its judgment, after weighing the competent evidence in the case, is supported by any substantial evidence, it must be affirmed. *United States* v. *Iwai & Co. (Ltd.) et al.,* 16 Ct. Cust. Appls. 542, T. D. 43265.

From the foregoing it follows, we think, that the parties to a reappraisement proceeding are entitled to have all competent evidence introduced upon the trial weighed and considered by the single judge sitting in reappraisement and by the Customs Court upon appeal from a judgment entered by the single judge.

In the case at bar, if the Customs Court did in fact weight the evidence in the case, its judgment should be affirmed, for we are clear that there is substantial evidence in the record supporting such a judgment, and we are equally clear that there is also substantial evidence supporting the judgment of the single judge sitting in reappraisement. In other words, so far as review by this court is concerned, a judgment rendered by the Customs Court after weighing the competent evidence in the record would be affirmed by us, whether the judgment was in favor of the Government or in favor of the importer, there being substantial evidence in the case supporting either theory.

Appellee's counsel in his brief states:

It would be an anomaly to hold that when an appellate tribunal, empowered by law to review facts, finds that the record discloses insufficient evidence to warrant a finding made by an inferior tribunal from which the appeal is taken to them, the appellate tribunal's decision thus putting into effect the original action of the appraiser, the appellate court must itself find substantial evidence to support the appraiser's action before it can overrule the lower tribunal whose action they have found to be illegal.

However, this is not a case of restoring the original action of the appraiser. That could be done only by dismissal of the appeal. *United States* v. *F. B. Vandegrift & Co. et al.*, 16 Ct. Cust. Appls. 398, T. D. 43120. The case before us involves an affirmative finding of value by the court sitting in reappraisement, and, that being so, the ordinary rule of determination of appraised value by the weight of the evidence should have been followed by the lower court.

· The question before us, therefore, is whether the lower court did in fact weigh all of the competent evidence in the case. If it did not, its decision must be reversed and the cause remanded for the performance by it of the duty which the law imposes.

Section 501 of the Tariff Act of 1922, relating to reappraisement, reads in part as follows:

\* \* \* In finding such value affidavits of persons whose attendance can not reasonably be had, price lists, catalogues, reports or depositions of consuls, special agents, collectors, appraisers, assistant appraisers, examiners, and other officers of the Government may be considered.

That said price list, Exhibit 2, was competent evidence in the case is well established by this court. *May Co. et al.* v. *United States, supra; Downing & Co. et al.* v. *United States*, 16 Ct. Cust. Appls. 293, T. D. 42873.

In the latter case the court, speaking through Presiding Judge Graham, said:

\* \* \* The reports of consular or customs representatives in foreign countries must, necessarily, largely violate the ordinary rule against hearsay evidence. But this does not make them inadmissible. If they are relevant they are admissible. *United States* v. *Cabrera Bros.*, 13 Ct. Cust. Appls. 82, T. D. 40936. The weight to be given to such items of evidence is a matter exclusively for the trial court, and this court will not attempt, upon appeal to it, to interfere with the free exercise of such discretionary power. If, in any case, the Customs Court should render its judgment upon evidence which, as a matter of law we might say was not substantial, it would not only be the function but also the duty of this court to correct such error.

That is to say, if the Customs Court, after weighing the evidentiary value of a price list, comes to the conclusion that it is not entitled to any probative force, this court will not disturb such finding, but it does not mean that the lower court may, because of an erroneous conception of the law, decline to weigh a price list duly offered in evidence.

Did the lower court in fact weigh the evidentiary value of the price list, Exhibit 2? This must be determined from its decision, and we are compelled to conclude that it did not. Upon this point, the lower court in its decision said:

The Government placed in evidence to support their contention a special agent's report dated February 4, 1927, in which Martin Vachon, assistant customs representative, stated that the information obtained in the report was obtained from Pierre Guerlain, owner of the Paris house, and from Raymond Guerlain, president of the Guerlain Perfumery Corp., New York, at the firm's office in Paris. He said that both Mr. Pierre Guerlain and Mr. Raymond Guerlain stated that Guerlain of Paris, France, sells this merchandise at wholesale for home consumption; that on April 15, 1926, a new price list was issued for home consumption, a copy of which is attached as Exhibit 2, to the report, and that this price list remained in force until November 14, 1926; that the prices shown in Exhibit 2 are the same for export to the United States as for home consumption; that the discount on the list prices for home consumption and the United States were 6 per centum, packing extra; that the tax on alcohol was 11.50 francs per liter, 100° strength, until August 3, 1926; that the luxury tax of 12 per centum was not included in the prices, but applied only to retail transactions, and that the transfer tax was included.

In this case we have a change in the market conditions during the year 1926. We have before us price lists showing that during that year there were four changes in the wholesale market value of the merchandise. The question at issue is at what time the various price lists became effective for the sale of the merchandise in the usual wholesale quantities in the markets of France.

The price list published on April 15 advanced the unit prices for future deliveries. On August 1 future deliveries at the prices shown in the April 15 price list were made subject to a 15 per centum majoration. On November 15 the unit prices were advanced and the 15 per centum majoration was included in the prices.

When did the change in prices really become effective in the home market? Let us examine the data furnished by the special agent. The copies of sales which he has forwarded with the price lists show a sale under the price list of April 15 was made on July 8; a sale under the price list of April 15 with the 15 per centum majoration of August 1 added thereto was made on October 13; and no sale was shown to have been made under the price lists of November 15. In each case, after the price list was published, copies of sales at the old prices are shown, thus proving that the price lists did not become effective immediately upon the issuance of the price list. A sale was shown to have been made 12 days after the price list of April 15 had been issued at prices fixed in a price list which had been issued in August, 1925. A sale was shown to have been made without the 15 per centum majoration 28 days after the 15 per centum majoration of August 1 was published. A sale was shown to have been made 19 days after the price list of November 15 had been issued at prices quoted in the price list of April 15, plus the majoration of 15 per centum of August. We must determine the time when the prices quoted in a new price list become effective from the date upon which the merchandise is shipped at the prices quoted in such price list.

A sale is always better proof of value than an offer, even although that offer be in the form of a price list. Indeed, as quoted hereinafter from an opinion of Judge McClelland, "Where no actual sale of merchandise has been made in a foreign country it can not be said that there is in that country a market for such merchandise."

The question at issue, the effective dates of the price lists, is a question of law to be determined by the court upon the evidence presented at the trial. We can not assume facts in order to arrive at a conclusion. We must take the facts at hand.

Only one sale is shown after the issuance of the new price list at the old prices and one sale at the new prices, and this is true for each advance made by the manufacturer, except in the case of the price list of November 15. Under that list no sales at prices contained therein were shown by the special agent. Therefore we conclude that the old price list of October, 1925, was still effective as of the dates of the shipments in question.

In support of the theory that price lists are not taken as proof of market value, we quote from the following decisions rendered by this court over a period of many years, and also a quotation from the Court of Customs and Patent Appeals.

Following the above quotation, the court cites and quotes from a large number of cases in which it had been held that a price list has no evidentiary value unless it is also shown that deliveries have actually been made at the prices named in such list.

That this was the view of the lower court is, we think, clear from that part of its decision quoted, especially wherein it said:

* * * We must determine the time when the prices quoted in a new price list become effective from the date upon which the merchandise is shipped at the prices quoted in such price list.

Here it will be seen that the court is undertaking to state a general proposition of law by the use of the phrase "a price list." Had the lower court limited its statement to *the* price list in issue, the Government would have had no right to complain because its decision would then be construed as holding that, considering all the evidence in the case, it did not regard the price list, Exhibit 2, as effective prior to any date of deliveries of merchandise made at the prices named therein. But this it did not do, and we must therefore inquire as to the correctness of its legal conclusion that a price list, duly offered in evidence, can not be considered as of any evidentiary value of market price at any time prior to proof of deliveries made at the prices shown thereon.

Paragraph (b) of section 402 of said tariff act reads as follows:

(b) The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers, and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The same language, "freely offered for sale," is found in paragraph (c) of said section, relating to export value, paragraph (d) relating to United States value, and paragraph (f) relating to American selling price.

Section 302 of the Emergency Tariff Act of 1921 provided in part—

That for the purposes of this title the export value of imported merchandise shall be the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is *sold or freely offered for sale* to all purchasers. * * * [Italics ours.]

The construction of the phrase "sold or freely offered for sale" came before this court in the case of *Robinson & Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 644, T. D. 41486. In that case the court said:

* * * Under the emergency tariff act mere offers for sale if made to all persons desiring to purchase goods for export to the United States were just as effective in making export value as sales actually made and concluded. * * *

* * * * * * *

If Congress intended that only sales passing title should be determinative of export value, it would have defined export value as the price at which merchandise was *sold* for export to the United States and left out of the "equation" the price at which such merchandise was freely offered for sale to all purchasers. [Italics quoted.]

In the case of *Sandoz Chemical Works* v. *United States*, 13 Ct. Cust. Appls. 466, T. D. 41365, the American selling price of certain merchandise was involved. There the court said:

* * * It will be noted the statute (sec. 402 [f]), does not require a sale of the product; it is sufficient if it be freely offered for sale.

We see no reason why the same construction should not be given to the words "freely offered for sale" found in paragraph (b) of said section 402 as this court has given to the same words as found in paragraph (f) of said section and in section 302 of the Emergency Tariff Act of 1921.

It is true that in the case of *H. Redfern* v. *United States*, 17 C. C. P. A. (Customs) 117, T. D. 43453, involving the foreign and export value of certain merchandise, this court said:

As we view the issue at hand, it is not necessary for us, upon this record, to decide the question as to whether or not there must be sales of such or similar merchandise shown in order to establish that there was a free offering for sale of the same to all purchasers in the principal markets of the country from which exported in the usual wholesale quantities and in the ordinary course of trade, and we do not decide that question.

However, there is no indication in this opinion that the construction of the words "freely offered for sale" in *Robinson Co.* v. *United States*, *supra*, and *Sandoz Chemical Works* v. *United States*, *supra*, should be overruled, and we repeat that we can perceive no good reason why a different construction should be given the same words as used in paragraph (b) of said section 402. It is perfectly true that in any given case the facts may be such as to require evidence of sales under

402

a price list, in order to establish such price list as effective, but we cannot hold, as a matter of law, that in all cases there must be sales at the prices named in a price list, and that it is not effective prior to the date of such sales. This the lower court did, as we construe its decision, and we think this constitutes reversible error. In the case at bar, had the importer admitted that Exhibit 2 was in effect from its date, April 15, 1926, certainly sales would not have been required to establish that fact. We repeat that, in our view, the court might have found that under the facts in evidence it would not regard the price list, Exhibit 2, as effective prior to the first sale shown under it. It would then have weighed all the evidence, including the evidentiary value of the price list. The Government was entitled to have Exhibit 2 weighed and considered in connection with all the other evidence in the case. It is apparent to us that this was not done, but that the lower court erroneously held, as a matter of law, that no price list had evidentiary value unless it were shown that deliveries had been made at the prices named therein.

With reference to the quotation in the opinion of the lower court from the case of *United States* v. *Proctor & Co.*, 15 Ct. Cust. Appls. 373, T. D. 42564, it is sufficient to say that the court found that there was no evidence of a market in the country of exportation for units of merchandise in excess of five million which were specified in the price list there involved; secondly, that there was no evidence that five million or more was the usual wholesale quantity in the foreign market. We quote from the opinion in that case:

* * * And we do not think that proof consisting of a statement by the seller that anyone in Germany could have the discount if he bought over five million in a half year, and a printed price list for sales in Germany showing such discount changes the situation at all, especially when it is admitted that no one in Germany has made such purchases nor will anyone be likely to do so. * * *

It will be noted from this statement of the court that the admission was not only that no sales had been made in Germany in lots of over five million in a half-year at the prices in the printed price list referred to, but that no sales had been made at all at any prices in such quantities. In the case at bar, if there had been evidence that there were no sales in France of merchandise of the character here involved at any prices in the usual wholesale quantities, then the decision of this court in *United States* v. *Proctor Co.*, *supra*, would be applicable; but the record affirmatively shows that such sales were made in France and the only question involved is as to the prices at which such sales were made. It is established by the record that there was a market in France for merchandise like that here in question.

The judgment of the United States Customs Court is *reversed* and the cause is *remanded* for a rehearing.