SEMON BACHE & Co. *v.* UNITED STATES (No. 4311)[1]

---

[1] C. A. D. 140.

United States Court of Customs and Patent Appeals, July 1, 1940

*Jerome G. Clifford* (*George W. Israel* of counsel) for appellant.

*Webster J. Oliver*, Assistant Attorney General (*Samuel D. Spector*, special attorney, of counsel), for the United States.

[Oral argument May 16, 1940, by Mr. Clifford and Mr. Spector]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges [1]

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, Judge Tilson dissenting, in reappraisements 111688–A and 112228–A. This is the third time that we are called upon to review judgments of the Customs Court in these reappraisement proceedings.

The merchandise consists of gauge glasses of two qualities, "Eureka" and "Hercules," purchased by appellant from Joseph Tomey & Sons Ltd., Birmingham, England, and imported in 1935. The Eureka quality merchandise was entered by appellant at various unit prices,

---

[1] JACKSON, Judge, took no part in the consideration or decision of this case.

less certain discounts, which, it is conceded by the parties, is the equivalent of the foreign manufacturer's list prices less 80 per centum discount; the Hercules quality merchandise was entered at various unit prices less discounts of 75 per centum, 10 per centum, and 2½ per centum.

The merchandise was appraised at the foreign manufacturer's list prices less 50 per centum discount, less 2½ per centum cash discount, less, as to the Eureka quality, 1 pence per dozen pieces for cost of fusing ends.

Appellant appealed for reappraisement.

The trial court, and upon review the appellate division, held that the entered values were the correct foreign values of the merchandise. It was agreed that the foreign values are the dutiable values of the merchandise.

There was at no time any issue before the Customs Court respecting the correctness of the manufacturer's list prices in the foreign market, and the sole issue was as to the discounts which should be allowed from the manufacturer's list prices in order to establish foreign value.

The Government appealed from the judgment entered in favor of appellant. We reversed said judgment and remanded the cause for, as stated in our opinion, "a reconsideration of the issues on the record as made and in accordance with the views herein expressed." *United States* v. *Semon Bache & Co.*, 25 C. C. P. A. (Customs) 387, T. D. 49466.

With respect to the general character of the evidence contained in the record, we stated in our opinion in said last-cited case (hereinafter called the "first case") as follows:

Before the trial court, appellee introduced in evidence Collective Exhibits 1 and 2—two affidavits of Joseph Leslie Tomey, managing director of the foreign manufacturer, and the testimony of the witness Isidore Sobel, vice president of Semon Bache & Co., appellee.

The Government offered in evidence Exhibits 3, 4, 5, and 6, consisting of reports of Government agents.

Collective Exhibit 1 relates to the Eureka quality gauge glasses, and Collective Exhibit 2 relates to the Hercules quality. Attached to and made a part of Collective Exhibit 1 is a copy of the record of sales made by the foreign manufacturer of the Eureka quality gauge glasses during the months of September, October, and November 1934, and a summary thereof. Attached to and made a part of Collective Exhibit 2 is a similar copy of sales and a summary thereof, relating to the Hercules quality.

It appears from Collective Exhibits 1 and 2 that merchandise like that here involved is sold in England for home consumption to four classes of purchasers designated in the exhibits as A, B, C, and D. Class A represents the *small users*, class B, retailers, class C, wholesalers, and class D, *"large users*, such as home railways, storage battery manufacturers, soda water syphon manufacturers, government departments, etc." [Italics ours.]

The judgment appealed from in said case was based upon the following findings of facts made by the appellate division:

We therefore find the following facts:

1. That the merchandise covered by these reappraisements consists of Eureka and Hercules qualities of gauge glasses.

2. That the foreign-market value of both of same is the correct dutiable value thereof.

3. That the export value is the same as the foreign value and is not higher.

4. That the usual wholesale quantity of the Eureka quality of gauge glass and the Hercules quality of gauge glass, at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of England at the time of exportation of the instant merchandise and in the ordinary course of trade was 1,000 feet or more for the Eureka quality and 500 feet or more for the Hercules quality.

5. That the discount applicable to the sales of wholesale quantities of the Eureka gauge glass is 80 per centum from the list price, with the further discount of 2½ per centum for monthly payments.

6. That the discounts applicable to the sales of wholesale quantities of Hercules gauge glass are 75 per centum from the list price, with a further discount of 2½ per centum for monthly payments.

7. That the *per se* prices are those stated on the invoice.

In our opinion in the first case, after reciting the facts appearing from the record, we held that the appellate division of the Customs Court, hereinafter referred to as the appellate division, in determining the usual wholesale quantities of the merchandise sold in the foreign market, had failed to consider as wholesale quantities sales to retailers for resale. We then stated:

In determining *usual* wholesale quantities, *all* wholesale quantities of the merchandise involved should, of course, be taken into account, and what the appellate division undoubtedly intended to say was that sales of less than 1,000 feet of the Eureka quality and less than 500 feet of the Hercules quality were *not* sales in *wholesale quantities*, and, therefore, should not be considered in determining the *usual* wholesale quantities.

We further stated in said opinion as follows:

In the instant case, we are called upon to determine whether, as a matter of law, the holding by the Second Division of the Customs Court that the sales of gauge glasses in England by the manufacturers thereof to retailers, for resale, were not sales in wholesale quantities in the ordinary course of trade, is supported by any substantial evidence of record. If it is, the judgment should be affirmed. If it is not, the judgment should be reversed.

\* \* \* \* \* \* \*

It clearly appears from the record, and there is no evidence to the contrary, that retailers and wholesalers, as well as all other purchasers, purchasing quantities of less than 1,000 feet of the Eureka quality gauge glasses and less than 500 feet of the Hercules quality, pay the manufacturer's list prices, less varying discounts, depending upon the quantities purchased, and that both qualities of gauge glasses are freely offered for sale in England to such purchasers, in such quantities, and at such prices.

In view of those facts, can it be said that those offers for sale, and sales made in accordance therewith, were not in the ordinary course of trade?

There is no evidence of record to establish that the sales to retailers, for resale, referred to in the testimony of the witnesses for appellee, were not made in the ordinary course of trade. Nor is there any evidence of record to establish that

such sales, and sales to other purchasers in quantities less than 1,000 feet of the Eureka quality and 500 feet of the Hercules quality, were not in wholesale quantities, except mere assertions by the witnesses Sobel and Tomey to that effect. Inasmuch as those assertions were mere conclusions based upon facts appearing of record, they should have been given no weight by the courts below in determining the usual wholesale quantities of the merchandise in question in the ordinary course of trade in England. * * *

    *      *      *      *      *      *      *

Counsel for the Government contend that the usual wholesale quantities in the ordinary course of trade for each quality of the involved gauge glasses are 12 dozen feet, and that the appraised values are the correct dutiable values, and we are asked to hold that the appraised values are the dutiable values.

It is not within the province of this court to make findings of fact in reappraisement cases. The jurisdiction of the court, in such cases, is limited to the review of judgments of the appellate division of the United States Customs Court on questions of law only.

We are of opinion that there is no substantial evidence of record to support the findings of the appellate division of the Customs Court.

At this point we think it proper to observe, inasmuch as the record in this appeal now before us (insofar as evidence is concerned) is the same as was before us in said first case, that it is wholly immaterial in the determination of the issues in this case whether our statement in said opinion that those "purchasing quantities of less than 1,000 feet of the Eureka quality gauge glasses and less than 500 feet of the Hercules quality, pay the manufacturer's list prices, less varying discounts, *depending upon the quantities purchased,*" [italics supplied] was accurate or inaccurate.

Also, our statement that "there is no substantial evidence of record to support the findings of the appellate division of the Customs Court" should be read in connection with other portions of the opinion, from which it clearly appears that the ground of reversal of the judgment was the failure of the appellate division to regard sales to retailers, for resale, as made in wholesale quantities.

Our conclusion in that case was in our opinion correct, that the appellate division erred in not considering sales to retailers, for resale, in determining the fact of what were "usual wholesale quantities," and erred in giving weight to the opinions of Sobel and Tomey upon that point.

Following our decision in the first case, the cause was remanded to the appellate division of the Customs Court for a reconsideration of the issues on the record as made, in accordance with the views expressed in our opinion.

The appellate division, however, instead of executing our mandate, affirmed its previous judgment and declined, under the facts of the case, to regard sales to retailers as made in wholesale quantities, and challenged the authority of this court to find that there was no substantial evidence to support its findings, as our jurisdiction in re-

appraisement cases was confined to the determination of questions of law only.

Upon appeal we reversed the judgment of the Customs Court and remanded the cause for a reconsideration of the issues on the record as originally made, and in accordance with the views expressed in our decision in the first case. *United States* v. *Semon Bache & Co.*, 27 C. C. P. A. (Customs) 89, C. A. D. 67. In our opinion in said case, hereinafter referred to as the second case, we called attention to the elementary rule that the question of whether there is any substantial evidence to support a finding of fact is a question of law.

Upon remand of this second case to the Customs Court, the appellate division which considered the first and second cases reconsidered its judgment in said second case, in accordance with the views expressed by us in our decision in the first case. In its decision the court stated:

There are included in the record before us records of sales of both qualities of gauge glasses involved herein. Attached to the affidavit (Collective Exhibit 1) of the importer's witness, Tomey, is a list of 708 sales of the Eureka quality made during the months of September, October, and November, 1934, to the various classes of purchasers referred to herein, to wit, small users, retailers, wholesalers, and large users. Attached to the affidavit (Collective Exhibit 2) of said witness is a list of 419 sales of the Hercules quality made during the same period to the same classes of purchasers. Both of said lists of sales were also included as part of the special agent's report which was offered in evidence by the Government at the trial below and admitted as Collective Exhibit 5. Additional reports of sales of both of said qualities of gauge glasses are also incorporated in the special agent's report which was offered by the Government at the trial below and admitted in evidence as Collective Exhibit 3. Said report contains records of 20 sales of the Eureka quality covered by invoices dated October, November, and December, 1933, and January, 1934; and 11 sales of Hercules quality covered by invoices dated October and November, 1933.

We have completely analyzed all of said records of sales, attached to and made part of the above-mentioned exhibits, and we are unable to find therefrom any support for the dutiable values claimed by the importer. On the basis of the present record, as we are required to consider it under the mandate of our appellate court, it is our opinion that the evidence herein is wholly insufficient to overcome the presumption of correctness attached to the dutiable values for each of the qualities of gauge glasses in question as found by the appraiser. We therefore hold that the proper dutiable values of the Eureka quality and the Hercules quality of gauge glasses involved herein are those found by the appraiser.

It will be borne in mind that following the mandate of our appellate court our conclusion herein has been reached without giving any weight, either to the oral testimony of importers' witness, Sobel, or to the statements contained in the affidavits offered by the importers' witness, Tomey, relating to the usual wholesale quantities of the instant merchandise. Nor do the statements contained in the special agent's reports introduced by the Government and received in evidence as Exhibits 4, 5, and 6, have any probative value so far as this case is concerned. In the light of the reasoning applied by our appellate court to the testimony of importer's witnesses, Sobel and Tomey, with respect to the usual wholesale quantity of each of the qualities of gauge glasses in question, it is our judgment that the statements contained in the special agent's report, which was offered by the Gov-

ernment at the trial below and admitted in evidence as Collective Exhibit 3, relative to the usual wholesale quantities of the instant merchandise, are entitled to no probative value, and accordingly, our conclusion herein has been reached, also, without giving any weight to such statements contained in said exhibit.

So, we repeat that we have carefully considered *each* of said Exhibits 3, 4, 5, and 6 and the lists of *all* sales attached to Collective Exhibits 1 and 2 and Exhibits 3 and 5, and on the basis of the *entire* record, as we have considered it, we find the following facts:

(1) That the merchandise covered by these appeals to reappraisement consists of certain gauge glasses, known as the Eureka and the Hercules qualities, imported from England.

(2) That the proper basis of appraisement for such merchandise is foreign value as such value is defined in section 402 (c) of the Tariff Act of 1930, and that there is no export value for either of said qualities, or if so, it is not higher than the foreign value.

(3) That the correct dutiable foreign values of such merchandise are the values found by the appraiser.

Accordingly, we hold as matter of law that the correct dutiable foreign values of the qualities of gauge glasses in question, known as the Eureka quality and the Hercules, are the values found by the appraiser as set forth in finding of fact (3).

The judgment of the lower court is therefore reversed and judgment will be rendered accordingly.

Judge Tilson dissented with an opinion.

From the judgment entered accordingly, the appeal now before us was taken.

The effect of the decision and judgment of the appellate division is that there is no substantial evidence in the record overcoming the presumption of the correctness of the appraisement made by the appraiser, and that is the only question before us.

In arriving at this conclusion the appellate division complied with our mandate in excluding from consideration the oral testimony of appellant's witness Sobel and the statements contained in the affidavits of Tomey, insofar as such testimony and statements related to the usual wholesale quantities sold in the foreign market of such merchandise as is here involved. The court also considered, in compliance with our mandate, sales to retailers, and also considered all sales shown in Collective Exhibits 1 and 2, and Exhibits 3 and 5, and "on the basis of the *entire* record" found that the correct dutiable values are the values found by the appraiser, based upon the presumption of the correctness of such values. Although in our decision in the first case nothing was said relative to the statements in the special agents' reports relative to usual wholesale quantities, the appellate division in the case at bar held that, in the light of our reasoning applied to the testimony of Sobel and the affidavits of Tomey relative to the usual wholesale quantities of the involved merchandise, the statements in said special agents' reports relative to that question were entitled to no probative value, and further stated that its conclusion was reached without giving any weight to

:such statements. In this the appellate division was, in our opinion, clearly correct, and was in harmony with its decision in the first case, wherein it stated with respect to such statements in the special agents' reports as follows:

* * * It is true that Special Agent Marquis in Collective Exhibit 3 did state that the usual wholesale quantity of this merchandise in the home market is from 4 or 5 cwt. up when sold by weight, and from 12 dozen upwards when sold by dozens. However it is merely a statement of his, unsupported, so far as this record is concerned, and based upon nothing except his own opinion. * * *

We would observe that there is nothing in the affidavits of Tomey or in the testimony of Sobel corroborating the statement in the special agents' reports that merchandise of this character was sold in England by weight except with regard to one particular sale.

In appellant's exhibits of sales of similar merchandise in the home market in England covering the months of September, October, and November, 1934, there is disclosed a total of 708 sales of Eureka gauge glasses. In these exhibits invoice numbers are given, the dates of sale, class of purchasers, number of feet in each sale, and the purported list prices of the 708 sales. Fifty-one sales were in amounts in excess of 1,000 feet. There are also disclosed 419 sales of Hercules gauge glasses with the same information as above stated relative to the Eureka sales. Of these 419 sales, 22 were in amounts in excess of 500 feet. The *number* of gauge glasses is not given in these exhibits.

There was also introduced in evidence by the Government Exhibit D, as part of Collective Exhibit 3, a price list which includes Eureka and Hercules glasses, issued by the manufacturer and seller of the involved merchandise, and also a price list of the same company, Exhibit C, as part of Collective Exhibit 5, showing the manufacturer's list prices covering Eureka and Hercules gauge glasses.

These price lists embrace 456 different list prices of these gauge glasses, according to diameter and length. The diameter of the glasses ranged from ⅜-inch to 1½ inches, and the length from 8 to 24 inches. All prices named are per dozen pieces. The prices named in each exhibit are identical. In Exhibit C there is no statement with respect to discounts, but Exhibit D contains the following:

Discounts on application. Special discounts for stock orders.

There are also some invoices attached to Collective Exhibit 3, billing gauge glasses in the home market at a fixed price per dozen.

It is clear to us from the foregoing that the gauge glasses offered and sold in the home market were in quantities of dozens, and that the usual wholesale quantity, in the ordinary course of trade, was in dozens of gauge glasses, and not in numbers of feet as set out in the exhibits of sales. The importance of this will be recognized when it is pointed out that if, instead of the number of feet sold as set out in the exhibits, the number of dozens of each diameter and length had been given, a very different result might be reached as to the usual wholesale quan-

tity than would be reached when considering the number of feet alone.

To illustrate, if in the sales aggregating over 1,000 feet of the Eureka glasses they had been invoiced as 12 dozen of each size and diameter of gauge glasses, and in sales of wholesale quantities aggregating less than 1,000 feet the gauge glasses were invoiced as 12 dozen of each size and diameter of glass, it would seem clear that 12 dozen would be the usual wholesale quantity of such glasses, and if the discounts upon such quantities were not uniform it is obvious that there could be no foreign-market value based upon such sales.

It is therefore our opinion, in harmony with the decision of the appellate division, that said exhibits disclosing sales in the home market do not form a basis for determining the usual wholesale quantity sold in the foreign market. Moreover each of the affidavits of Tomey contains the following statement:

3. The aforesaid transcript of record of sales reflects only sales made by my company for home consumption and includes no export sales which are made to customers located in all parts of the world and forms a substantial proportion of my company's business.

In order to establish foreign value of merchandise, under the law as it existed at the time of the importation of the merchandise here involved, all unrestricted offers for sale in the principal markets of the country of manufacture, whether for home consumption or for export to countries other than the United States, should be considered. *United States* v. *Livingston & Southard, Inc.,* 23 C. C. P. A. (Customs) 214, T. D. 48060.

There is nothing in the record with respect to specific sales in England for export to countries other than the United States.

It follows from the foregoing that the only evidence in the case which could be relied upon to overcome the presumption of the correctness of the appraisement made by the local appraiser consists of statements found in the affidavits of Tomey and in the several reports of the special agents, and in the testimony of appellant's witness Sobel.

With respect to the testimony of the witness Sobel, we see no reason to change the views expressed by us in our opinion in the first case. It is very clear that, as stated in that opinion, he did not regard sales to retailers as being sales in wholesale quantities. It is plain from his testimony that he regarded 1,000 feet as the minimum wholesale quantity of Eureka gauge glasses, and 500 feet as the minimum wholesale quantity of Hercules gauge glasses. This is conceded in appellant's brief wherein it is stated:

Mr. Sobel testified time and time again that the minimum wholesale quantity of Eureka quality gauge glasses was 1,000 feet, and that the minimum wholesale quantity of the Hercules quality gauge glasses was 500 feet. * * *

Having failed to include sales to retailers in quantities less than above stated, his testimony as to what constitutes a usual wholesale

quantity of either the Eureka or Hercules gauge glasses is entitled to no weight whatever.

Furthermore this witness testified as follows:

X Q. All right. Now, Mr. Sobel, do you know the prices at which the exporter sells this same merchandise, Eureka and Hercules, in usual wholesale quantities, in the ordinary course of trade for export to countries other than the United States; "yes" or "no"?—A. Well. I can't answer that question "yes" or "no."

Obviously, if the witness was not qualified to testify as to prices and quantities of sales for export to countries other than the United States, which sales, together with sales for export to the United States, Tomey stated in his affidavit form "a substantial proportion of my company's business," he, the witness Sobel, was not qualified to testify as to the foreign value of merchandise such as is here involved.

Clearly the appellate division did not err in declining, in accordance with our mandate, to give any weight to the testimony of the witness Sobel relating to the usual wholesale quantities of the instant merchandise.

We next come to the consideration of the statements made in the affidavits of Tomey.

It is clear to us, as stated in our decision in the first case, that the statements in his affidavits were based wholly upon the list of sales attached to his affidavits. Each of the affidavits states, after the recitals of the usual wholesale quantity of each quality of gauges, "all of which is shown by transcript of my company's record of sales for use in the home market * * * attached hereto."

Furthermore, as hereinbefore stated, the affidavits state that such transcripts of sales include no sales for export to other countries, which sales form a substantial proportion of his company's business. Immediately following this statement there is found in each affidavit the statement that the gauge glasses have been freely offered for sale to all purchasers in *England* in usual wholesale quantities, etc.

It therefore appears that the lower court committed no error in holding that these affidavits were not sufficient to overcome the presumption of the correctness of the appraisement made by the local appraiser.

What we have said with respect to sales being made in quantities of dozens and not in quantities of feet also applies to the testimony of the witness Sobel and the statements in the affidavits of Tomey.

There remains for consideration the special agents' reports. Judge Tilson in his dissenting opinion quotes from one of such reports, Collective Exhibit 3, as follows:

*Usual Wholesale Quantity.*—The usual wholesale quantity of the gauge glasses sold in the home market is from 4 or 5 cwt. on up when sold by weight, and from 12 dozen upwards when sold by dozens.

It does not appear that upon this question the special agent had any knowledge except such as he gained from an inspection of the

books of the manufacturer, and that information is set forth in the exhibit of sales and price list attached to his report.

Judge Tilson in his dissenting opinion expresses the view that, if all of the evidence of the importer be disregarded, the evidence in said special agents' reports sustains appellant's contention with respect to the usual wholesale quantities of such gauge glasses. We have hereinbefore quoted from the decision of the appellate division in the first case, wherein it was stated that the statement of the special agent with respect to usual wholesale quantities was "merely a statement of his, unsupported, so far as this record is concerned, and based upon nothing except his own opinion." Judge Tilson joined in this decision, and we think his views on this point thus expressed in the first case were correct, and not the contrary view expressed by him in the case now before us.

Moreover, in said special agent's report in Collective Exhibit 3, immediately following the statement quoted by Judge Tilson, there is found the following:

The status of the buyer with the manufacturer, together with the quantity of merchandise purchased, determines the price to be paid.

The manufacturer has no definite quantity specified which must be purchased to get any particular price. It is usually a case of bargaining between the purchaser and the seller.

Appellant's counsel in their brief contends that the statements last above quoted related only to sales in quantities of less than 1,000 feet of the Eureka and less than 500 feet of the Hercules gauge glasses. We can find nothing in the record to warrant this assumption. The statements were made under the heading *Usual Wholesale Quantity*, and clearly refer to sales which the special agent regarded as being made in such quantity. If the statement in the special agent's report last above quoted be taken as true, there could not be a foreign value of the instant merchandise, because a bargaining as to price would negative a free offer of sale in any quantity to all purchasers at a uniform price.

However, we do not pass upon the question of whether this statement should be given any probative force. It is not clear to us whether the majority of the appellate division relied upon the statement or not, and in any event it is well established that in reappraisement proceedings the weight to be given to affidavits and special agents' reports is a matter for the tribunals of the Customs Court and not this court to determine. *United States* v. *T. E. Ash, etc.,* 22 C. C. P. A. (Customs) 395, T. D. 47401; *Golding Bros. Co., Inc.* v. *United States,* 22 C. C. P. A. (Customs) 590, T. D. 47585; *T. D. Downing & Co. et al.* v. *United States,* 16 Ct. Cust. Appls. 293, T. D. 42873.

We deem it unnecessary further to discuss the issues involved. The effect of the decision of the appellate division is that, upon reconsider-

ation of the record pursuant to our mandate in the first case, and in accordance with our views expressed in our decision in that case, there is no substantial evidence overcoming the presumption of correctness attached to the dutiable values for each of the qualities of gauge glasses in question as found by the appraiser. After a thorough examination of the record we are in agreement with the conclusion of the appellate division.

In arriving at our decision we have considered some matters that were not raised or considered by us in the first case, nor raised by counsel in the instant case. However, in arriving at our conclusion herein it is proper and necessary for us to consider the record and ascertain from it if, as a matter of law, the appellate division erred in its conclusion.

Although in its decision the appellate division did not discuss some of the matters discussed by us herein, that is immaterial for it is well established that it is the judgment rendered which is appealed from, and not its decision or opinion. *Winter Bros.* v. *United States*, 19 C. C. P. A. (Customs) 113, T. D. 45245; *United States* v. *Tausig & Pilcer, etc.*, 18 C. C. P. A. (Customs) 421, T. D. 44681.

For the reasons hereinbefore stated, the judgment appealed from is *affirmed*.