## UNITED STATES *v.* BLEFELD & GOODFRIEND, INC.

**No. 4416.**—Invoices dated Kobe, Japan, March 13, 1936, etc.
Entered at New York April 14, 1936, etc.
Entry No. 827288, etc.

### First Division, Appellate Term

(Decided October 18, 1938)

*Charles D. Lawrence,* Acting Assistant Attorney General (*Daniel I. Auster,* special attorney), for the appellant.
*Strauss & Hedges (Eugene F. Blauvelt* and *William F. X. Band,* of counsel) for the appellee.

Before McCLELLAND, BROWN, and KEEFE, Judges; McCLELLAND, Presiding Judge, dissenting

BROWN, Judge: This case is a review of a decision of a single judge on reappraisement involving the dutiable value of glassware imported from Japan. The record is full and complicated. The evidence is directed primarily at the export value of similar merchandise sold for export to the United States, for the proof establishes that the identical merchandise is not freely offered for sale in the usual wholesale quantities for consumption in Japan. The judge below, after carefully weighing the evidence, made factual determinations of export value on each disputed item from his interpretation of the

weight of the admissible evidence. He also made rulings excluding certain exhibits which will be hereafter discussed. From these factual findings of export value the Government appealed for review before this division.

We agree with the judge below that there was no home market value and, secondly, that there was an export value to be derived from similar merchandise sold for export to the United States.

We agree with and affirm the ruling of the judge below in excluding Exhibits 28, 29, and 32 because they are uncertified photostatic copies. We also agree with and affirm his ruling excluding Exhibits 31 and 35 as too remote from the date of the exportation.

As to the exclusion of Exhibits 30, 33, and 34 on the ground that they were copies we are inclined to think they are duplicate originals and not copies. We think, however, that in the circumstances of this case this exclusion by the judge below was immaterial error.

The judge below made factual findings of value on a complicated record after carefully weighing the evidence on a question of similarity and applied the export values of goods held comparable, there being admittedly no home market value.

With his findings and conclusions on the weight of the evidence in that regard we agree, and find nothing in the Exhibits 30, 33, and 34, if they had been admitted in evidence, which would have changed the weight of the evidence upon which the factual findings and conclusions below were based.

We, therefore, hold that it is unnecessary to reverse the decision below and to direct a new trial held after the Exhibits 30, 33, and 34 are admitted in evidence.

The judgment below is affirmed.

### DISSENTING OPINION

McCLELLAND, Presiding Judge: This is an application for review of a decision made by a single judge on reappraisement involving the dutiable value of glassware imported from Japan. Judgment below was rendered in favor of the plaintiff.

In support of the claim of the plaintiff considerable oral testimony, as well as affidavits made by persons residing beyond the limits of the United States, was submitted. When the plaintiff rested its case the Government submitted oral testimony which it sought to supplement by offering certain reports from Treasury representatives or attachés located in Japan, and objections were made to them by counsel for the plaintiff on several grounds.

Three of such reports, numbered respectively K36–146, dated September 30, 1936, K37–17, dated February 4, 1937, and K36–145, dated September 30, 1936, were specifically objected to on the ground

that they were photostatic copies and not certified as it is claimed the law requires. These were received in evidence by the judge presiding and marked Exhibits 28, 29, and 32, respectively, subject to consideration of the foregoing objections.

A report numbered K37–92, dated March 29, 1937, was offered by counsel for the Government and was objected to by counsel for the plaintiff on the ground that it was a carbon copy, not an original, and was not certified in compliance with the law, and on the further ground that so far as was shown the report refers to merchandise shipped to Schwartz-Gilbert Co., as to which merchandise neither samples nor witnesses had been produced, and nothing appeared to connect it with the merchandise in issue. The report was received in evidence, subject to consideration of the objections, and marked Exhibit 30.

A report numbered 35–82, dated April 12, 1935, was offered in evidence by counsel for the Government and objected to by plaintiff's counsel on the ground that it was a copy and not certified in accordance with the law, and was incompetent, irrelevant, and immaterial. This was received in evidence, subject to consideration of the objections, as Exhibit 31. It was later pointed out in plaintiff's brief that this report was dated eleven months prior to the date of exportation of the earliest shipment involved herein.

Two reports, one numbered K37–86 and the other K37–93, dated March 26, 1937, and March 29, 1937, respectively, were offered in evidence by counsel for the Government and objected to by counsel for the plaintiff on the ground that they were carbon copies, not certified, and were incompetent, irrelevant, and immaterial. They were received in evidence, subject to the same condition as the others, as Exhibits 33 and 34 respectively.

A report numbered 34–100, dated September 27, 1934, was offered in evidence by counsel for the Government and objected to on the ground that it was made long before the merchandise here under consideration was shipped, and on the further ground that it was not an original and had not been certified as required by the law. It was received in evidence subject to consideraton of the objections, and marked Exhibit 35.

The trial judge, in his opinion, passing upon the foregoing reports, said:

We note that the Secretary has from time to time published letters to collectors in which he identifies accredited special agents and Treasury attachés. He has also designated the proper official to certify to the correctness of copies of special agents' reports. (See T. D. 39305, T. D. 40515). If this certificate had been placed upon any of these documents they would have been admissible under the statute above quoted, in my opinon. Not bearing any such certificate and none of them being such an instrument as will prove itself, I am of the opinion that they cannot be admitted because of lack of legal identification. I think the

objection that certain of them are too far removed in time from the date of importation to be admissible (viz, Exhibits 31 and 35), is also well taken. None of the reports can be admitted by the court. Exception allowed to the defendant.

An examination of these reports discloses the following: Exhibits 28, 29, and 32 are photostatic copies, not certified by any officer designated by the Secretary of the Treasury to make such certification in accordance with the provisions of section 501 of the Tariff Act of 1930. As to these, I agree with the view of the majority that ruling of the judge below excluding them from evidence should be affirmed.

As to Exhibits 31 and 35, the first of these reports bears date April 12, 1935, and the second September 27, 1934. Exhibit 31 was made eleven months prior to the earliest shipment here involved, and Exhibit 35 was made a year and six months prior to such shipment. They are each manifestly too remote from such date of exportation to have any probative value as to market conditions, especially since no reference is made to them in any report bearing a later date. The trial judge was therefore justified in sustaining the objection to their admission into evidence.

As to the remaining reports, three in number, Exhibits 30, 33, and 34, which the trial court excluded on the ground that they were copies not certified as required by section 501, *supra*, it appears from an examination of such reports that while they are carbon copies they are originals in the sense that each is signed by Treasury Representative E. W. Daley and bears the signature of Martin G. Scott, Treasury attaché under the word "Approved."

It is not disputed in the record anywhere that the signatures of E. W. Daley and Martin G. Scott appearing on each of these reports are genuine. As I read the record, the exclusion of these reports therefrom was based solely upon the fact that the print thereof was made through carbon paper, the holding in effect being that this made them carbon copies subject to the requirement that they be certified before they might be received in evidence.

In the Tariff Act of 1922 for the first time in the history of tariff legislation it was provided in section 501 thereof that on the hearing of appeals to reappraisement of imported merchandise—

* * * price lists, catalogues, reports or depositions of consuls, special agents, collectors, appraisers, assistant appraisers, examiners, and other officers of the Government may be considered. Copies of official documents, when certified by an official duly authorized by the Secretary of the Treasury, may be admitted in evidence with the same force and effect as original documents.

Substantially this same provision was embodied in section 501 of the tariff revision of 1930, the only differences being that the term "customs agents" was substituted for "special agents", and the words "may be considered" were changed to "may be admitted in evidence."

I find nothing in the provision quoted to indicate that an original report of any of the officers of the Government described therein, duly signed by such officer, may not be admitted in evidence without being certified by an official designated to make such certifications by the Secretary of the Treasury, and neither do I find anything in the provision quoted which makes a report of any of the officers specified inadmissible, although duly signed by such officer, merely because the print of such report appears to have been made through carbon paper rather than through a typewriter ribbon.

Although the provision quoted has been in force for a period of sixteen years and there have been unquestionably many hundreds of reports of special and customs agents, Treasury representatives, and attachés similar to those under consideration received in evidence by this court without any question of their failure to bear the certification of some officer designated by the Secretary of the Treasury to make such certification, this appears to be the first instance where that question has been raised, and it seems to be purely technical and without merit.

I find the following in the brief filed by counsel for the Government, and quote it with approval:

In *Pittsburgh C., C. & St. L. Ry. Co.* v. *Brown*, 98 N. E. 625, the court (Supreme Court of Indiana) said:

Where duplicates are produced by mechanical means, all are duplicate originals, and any of them may be introduced in evidence without accounting for the nonproduction of the other. * * *

In commenting on this rule, we find, in 22 Corpus Juris, p. 1024, the following:

* * * The most usual application of this rule is found in the case of carbon copies, which are usually admitted as duplicate originals, * * *.

Richardson on Evidence (Fifth Ed. 1936, section 211) says:

* * * But the "copy" under certain conditions may become the "original." Wigmore on Evidence, secs. 1231 and 1235. Contracts and other writings are frequently executed in duplicate, each party retaining one. All such duplicates and counterparts are regarded as originals. It follows, therefore, that either party may produce the duplicate which he has and prove it as an original copy without proving or producing the other. *Hubbard* v. *Russell*, 24 Barb. (N. Y.) 404; *Crossman* v. *Crossman*, 95 N. Y. 145; *Sarasohn* v. *Kamaiky*, 193 N. Y. 203, 86 N. E. 20. Where several copies of a writing are made at the same time by the same mechanical operation, each is regarded as an original. Thus, printing press copies or all the reproductions from the same setting of type are treated as originals. *Huff* v. *Bennett*, 6 N. Y. 337. The most important application of this rule at the present time is found in the case of carbon copies. If the entire document is written at the time the carbon copy is made, leaving no blanks to be filled in later, the carbon copy will be received in evidence as a duplicate original. But where several copies are made on the typewriter at the same time, by the use of carbon paper, and then one of them is signed, the signed copy becomes the original and the others are copies with the signature missing. *International Harvester Co.* v. *Elfstrom*, 101 Minn. 263, 112 N. W. 252, 12 L. R. A. (N. S.) 343; *Liberty Chair Co.* v. *Crawford*, 193 N. C. 531, 137 S. E. 577. * * *

Manifestly, the intent of the Congress in embodying the provision in section 501 of the Tariff Act of 1922 previously quoted was to liberalize the procedure in the hearing of reappraisements. This view is supported by the following language found in *T. D. Downing & Co. et al.* v. *United States*, 16 Ct. Cust. Appls. 293, T. D. 42873:

Therefore, to facilitate commerce and the collection of customs duties, the Congress has greatly liberalized the rules of evidence applicable in such cases. The reports of consular or customs representatives in foreign countries must, necessarily, largely violate the ordinary rule against hearsay evidence. But this does not make them inadmissible. If they are relevant, they are admissible.

In view of the situation thus developed it appears that the trial judge erred in excluding Exhibits 30, 33, and 34 solely on the ground that they were copies and lacked the certification required by section 501 in order to be admissible. It is observed that other objections to that passed upon by the trial judge were made to the admission of these three exhibits which appear not to have been considered by him in reaching his decision to exclude them from the record. The judgment below should therefore be reversed and the case remanded to the trial judge for further proceedings consistent with the views herein expressed.