WILLIAM SHALAND *v.* UNITED STATES

No. 7926.—

Entry Nos. 707690; 723604; 815734.

(Decided January 5, 1951)

*Siegel, Mandell & Davidson (Sidney Mandell* of counsel) for the plaintiff.

*David N. Edelstein,* Assistant Attorney General *(Samuel D. Spector,* special attorney), for the defendant.

JOHNSON, Judge: This appeal for a reappraisement, brought by the importer, involves shipments of novelty porcelainware from Japan during the year 1940. The shipments were made from Nagoya, but the goods were manufactured in Seto, a town about 40 miles inland. The issue raised is whether or not the freight from Seto to Nagoya was a part of the value. An inspection of the invoices discloses that there are various kinds of merchandise covered thereby other than porcelainware. All charges for inland freight from the place of manufacture, including Seto to Nagoya, were deducted but the deduction was disallowed only on the porcelainware in question.

At the trial, the only witness for the plaintiff was Albert White. He testified substantially as follows: He was the plaintiff's foreign buyer since 1936. He was in Japan from September 1936 to December 1937, from April 1938 to June 1939, and from October 1939 to July 1941, including the time the goods in question were purchased and shipped from Japan. His duties were to select and buy the merchandise from the various factories, and give instructions for packing and shipping same.

The commissionaire who shipped the goods had his place of business in Nagoya. Goods purchased at various inland towns were all shipped to his commissionaire in Nagoya where the various invoices were collected and one invoice was used to replace that of the various manufacturers. The invoice prices of the manufacturer always covered the freight from the maker's place of business to the warehouse of the commissionaire. These small makers deliver their products to a buying agent because they are in no position to ship the goods themselves. Merchandise is never purchased from a sample displayed in the office of the commissionaire in Nagoya. If there is a new novelty, the commissionaire might have a sample which the manufacturer has left with him, but it is not there to be used by the commissionaire for the purpose of placing orders for the manufacturer. The commissionaire is in the employ of the plaintiff and not that of the manufacturers. Although the commission of the commissionaire is a percentage of the entire cost of the goods, including the freight and packing charges, the plaintiff found that it was more advantageous to pay the percentage on such a basis rather than a higher percentage on the goods alone.

The merchandise upon which the inland freight was disallowed was purchased by the witness at the places of manufacture in Seto. Seto was always the market place for these goods. They could not be purchased at any other place. These goods such as are the subject of this controversy were not freely offered for sale in Nagoya. The goods for which Nagoya is the market consisted of large dinnerware sets, tea sets, and the better quality of porcelainware. But the principal market for novelty porcelainware was in Seto.

The manufacturers in Seto freely offer these goods to all purchasers in the usual wholesale quantities, which on such items would be in lots of 50, 100, or 200 gross. The goods were sold in the ordinary course of trade for export at the prevailing wholesale prices at the factory, which prices did not include inland freight. Then, when the order was written, the item of local freight would be included for the reason that it was easier to do it that way. The manner of purchase was that the manufacturer would quote a price. Then the cost of the inland freight would be figured, and the cost of casing and packing. The buyer would write an order for his commissionaire including these charges. The commissionaire would write the order to the manu-

facturer at his place of business in Seto, so that the price would include transportation from Seto to the port of shipment. Most of the transactions of this class of goods, cheap porcelainware, are consummated at Seto not only by the witness, himself, but by other buyers as well. Seto is the principal market for this cheap porcelainware because the material from which the porcelain is made is located at that place and coal deliveries are easily obtainable. These goods from various places of manufacture are all gathered in the "go-down" (warehouse) of the commissionaire. They come all packed for shipment except that the top cover is not nailed down. Cases covering the same class of goods are sampled at random to see if the goods correspond to the merchandise purchased. Then more packing such as straw is tucked in along the sides and on top of the case, it is nailed securely, and iron straps are placed around the case. Before shipping to the United States, the commissionaire would present Mr. White with an invoice covering 40 or 50 cases, and he verified all the charges thereon, including local freight, checking with the transportation company's bills.

On cross-examination the witness testified that the items on the invoice other than porcelainware were purchased and handled in the same manner; the invoice price always included the inland freight; and that the deduction of such inland freight was allowed. He pointed out on the invoice an item of tin wrist watches which included the inland freight, where the goods were purchased in the same manner and the item of inland freight was included in the price, and the deduction thereof on entry was allowed.

The Government offered in evidence a Treasury attaché's report dated March 26, 1940, relative to a shipment of Takito Shokai, Ltd., of Nagoya, to the Taiyo Trading Co. of Chicago, the investigation having been undertaken particularly with reference to consular invoices numbered 3400, 3529, and 3771, which were certified as exported on October 7 and 23, and November 8, 1939, respectively. The firms supplying the merchandise were located in Nagoya and Seto. All of the firms were not visited, the attaché having obtained most of his information from Takito Shokai, Ltd., of Nagoya. Takito Shoten is a buying agent for Taiyo Shokai. Most of the firms interviewed sold to Takito Shoten at packed prices, including delivery to Takito's Nagoya premises, and have never sold ex factory and have never charged separately for inland freight. The attaché stated that Seto is a manufacturing center for the type of merchandise under investigation, dinner and luncheon sets; that the merchandise is always sold packed, delivered to Nagoya; that Marua Shoten of Seto has never sold or quoted prices ex factory, and has never charged separately for inland freight, such expenses being an integral part of the firm's selling price. Takito, as well as other firms selling porcelainware, deducts inland freight from its invoices; that such is an

arbitrary deduction, as it is never billed separately for any freight or transportation charge, and does not know what such payment actually is.

Counsel for the importer contends that the record clearly establishes that the proper dutiable values of the items in question are the prices at which the goods are freely offered for sale in the principal market of the country for exportation, in the ordinary course of trade, and in the usual wholesale quantities, packed ready for export to the United States, and that such prices are the invoice unit prices less the items of local freight which were deducted on entry.

Counsel for the Government contends that the place of principal market is not at issue because there is no competent proof that the merchandise was freely offered for sale at Seto at a price different than the price at Nagoya.

It seems to me from a careful consideration of the evidence produced that the plaintiff has established without contradiction that porcelainware, such as is under consideration herein, was purchased by the witness, Albert White, personally as representing the plaintiff. He personally figured what the freight charges would be from Seto to Nagoya and what the cost of cases and packing would be, and he added such charges to the price at which the goods had been offered him for sale by the various manufacturers in Seto. Mr. White was the buying agent who actually purchased the goods. His commissionaire was the shipping agent at whose place of business in Nagoya all the goods from the various manufacturers were gathered and shipping invoices prepared. The situation is entirely different from the transactions described in the Treasury attaché's report. There, purchasers for export came to buy their goods of Takito Shokai, Ltd., of Nagoya. The class of goods was different. There, china dinnerware and tea sets were involved. Here, the porcelainware is of a cheap variety and comprises certain novelties. Besides, the investigation of the Treasury attaché was not undertaken with respect to the shipments in question. It was completed long before these shipments had been made from Japan. It therefore can be accorded but little weight in determining the value of the goods before me in this case. On the other hand, the actual purchaser of the goods in Japan testified exactly how the transactions were consummated, and what the province of the commissionaire was, which, in my opinion, fully established that the market for the novelty porcelainware in question was at Seto rather than at Nagoya, and the value in Seto did not include any charge for inland freight to Nagoya. Such being the case, the inland freight charge is not a part of the value.

For the reasons stated I find that the values of the merchandise are represented by the appraised values, less inland freight. Judgment will be entered accordingly.