(A. R. D. 12)

UNITED STATES *v.* WILLIAM SHALAND

Entry Nos. 707690; 723604; 815734.

First Division, Appellate Term

(Decided January 15, 1953)

*Charles J. Wagner*, Acting Assistant Attorney General (*Samuel D. Spector*, special attorney), for the appellant.

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel) for the appellee.

Before OLIVER and MOLLISON, Judges

MOLLISON, Judge: This is an application for review of the decision of Johnson, J., sitting in reappraisement, reported in 26 Cust. Ct. 481, Reap. Dec. 7926. From a decision in favor of the plaintiff below, defendant below appeals.

The merchandise involved consists of novelty porcelainware exported from Japan during the year 1940. Both here and below there was no dispute that the proper basis of value to be applied to the

merchandise was export value, as defined in section 402 (d), as amended, of the Tariff Act of 1930, and it appears that the only element of the appraised value challenged below was the item of local freight, which represents the amount of the advance of the appraised values over the entered values.

It likewise does not appear to be disputed that the place of manufacture of the involved merchandise was Seto, Japan. The advance of the appraised over the entered values represents the cost of freight from that point to Nagoya, Japan.. The court below found that Seto was the principal market in Japan in which merchandise such as or similar to that here involved was freely offered for sale to all purchasers in the ordinary course of trade and in the usual wholesale quantities for exportation to the United States. The appellant here contends that the only price at which such or similar merchandise was freely offered for sale in Japan was a delivered price at Nagoya, and that Nagoya was the principal market for such or similar merchandise within the contemplation of the statute.

So far as the principal market is concerned, we are satisfied that the court below correctly found this to be Seto, rather than Nagoya. There is not the slightest evidence in the record to indicate that merchandise such as or similar to that at bar was ever offered for sale or sold in Nagoya. The record shows that Nagoya was the place of delivery; but not of offer or sale, and that offers and sales took place in Seto. It is well settled that the place in which merchandise is freely offered for sale, and not the place at which merchandise is delivered in fulfillment of a contract of sale, constitutes the principal market contemplated by section 402, *supra*. *M. V. Jenkins et al.* v. *United States*, 34 C. C. P. A. (Customs) 33, C. A. D. 341, and cases therein cited.

However, citing the cases of *United States* v. *Zellerbach Paper Co.*, 28 C. C. P. A. (Customs) 303, C. A. D. 159, and *United States* v. *Heffernan Paper Co.*, 13 Ct. Cust. Appls. 593, T. D. 41454, as analogous on the facts and determinative of the law applicable thereto, appellant here urges that the only price at which merchandise such as or similar to that here in issue was freely offered for sale in Japan was a price including delivery to Nagoya.

Both of the cited cases related to situations involving foreign value and stand for the proposition that where merchandise is freely offered for sale in the principal markets of the country of exportation at a uniform price, regardless of destination or place of delivery in the said country of exportation, the foreign value thereof is the delivered price, since that is the only price at which the merchandise is freely offered to all purchasers.

As establishing that merchandise such as or similar to that here involved was always offered for sale and sold at a price including deliv-

ery to Nagoya, appellant relies upon, among other things, evidence in the form of a report of a Treasury attaché received in evidence as defendant's exhibit 1, the gist of which appears in the following paragraph on page 10 thereof:

As regards merchandise made in Seto, this is sold at a packed price, including delivery to Nagoya. It is noted that Takito as well as other firms deduct inland freight from their invoices. This is an arbitrary deduction, as they are never billed separately for any freight or transportation charge, and do not know what such payment actually is. We have on this and other investigations called on practically every maker in Seto and have never found one sale made ex factory, nor is merchandise ever quoted ex factory. Delivery of the merchandise is never taken in Seto but always at Nagoya. It is understood that prices quoted on this merchandise include packing and delivery to Nagoya.

The statements made above are directly disputed by the testimony of plaintiff-appellee's witness, Albert White, a buyer for the plaintiff, who purchased the particular items here under consideration, and who was a resident buyer for many years in Japan, including the time of exportation, engaged in the purchase of merchandise of the character of that here in issue.

Mr. White's testimony was summarized and reviewed at some length in the opinion of the court below. The following excerpts, however, detail his testimony on the disputed point:

Q. Please state the circumstances under which you made the purchases and at what prices?

\*       \*       \*       \*       \*       \*       \*

THE WITNESS: I bought it at the maker's place; at the factory we sat down and figured a price. At this moment, I can't remember the exact price the man asked me, but using this invoice, I imagine that it was two or three per cent less than the price indicated here, which seems to be—which is nine yen 50 sen, \* \* \*. The price of these goods in Seto at the manufacturer's place of business was about 9 yen—9 yen 25, and that also included casing and packing.

Q. And, that 9.50 yen included the local freight charge?—A. Included the transportation from the maker's place to the commissionaire's warehouse \* \* \*. (Tr. pp. 10–11.)

\*       \*       \*       \*       \*       \*       \*

Q. And manufacturers in Seto freely offered these goods?—A. Yes.

Q. And at the factory at a price that was the invoice price less the item of local freight that appeared on the invoices?—A. That is correct. You mean the charge from Seto to Nagoya?

Q. Yes.—A. Yes. (Tr. p. 19.)

\*       \*       \*       \*       \*       \*       \*

Q. And under what circumstances did you make these purchases?—A. I went to the manufacturer's place of business in Seto or in other places, and fixed the prices. We first selected the items and fixed the purchase price.

Q. You fixed the purchase price without this local rate for freight charge?—A. Without any charges. Then we added, depending on the size of the item, either two or three per cent for transportation to our commissionaire's warehouse. (Tr. p. 23.)

In the brief filed on behalf of the appellant, its counsel contends that the testimony given by Mr. White on the point is entitled to no weight as competent proof inasmuch as he—

\* \* \* approximated costs and failed to produce the original order blanks, or the manufacturers' invoices to substantiate his uncorroborated statements. The failure of the importer to produce such documents (which were in his possession) raises the presumption that their production would have been detrimental to the importer.

Upon examination of the record we find that Mr. White's testimony was directed toward the proposition of whether the Seto-Nagoya freight charge was included in the price at which the goods were offered for sale by the manufacturers, and not toward any specific instance except by way of illustration. The record does not establish that the importer had in his possession any of the "original order blanks, or the manufacturers' invoices," or that they were within his power to produce. On the contrary, when interrogated by counsel for the Government on cross-examination on this subject, the witness gave the following testimony:

X Q. Have you got those invoices from the factory to your commissionaire here?—A. I don't have them with me.

X Q. Have you them in this country?—A. No; no, sir. (Tr. p. 52.)

The witness was testifying under the sanctions of oath and cross-examination, and had been duly qualified to testify concerning the subject matter. His testimony was therefore competent, and in view of the fact that it was based upon personal experience and detailed in character, we believe that, standing alone and uncorroborated, it was entitled to greater weight than the impersonal and more general statements made in the report of the Treasury attaché, defendant's exhibit 1, *supra*.

It is noted that the entire report of the Treasury attaché is written in the passive form—e. g., certain firms "were" visited, and certain information "was" secured—and these actions supposedly were performed by more than one person, since the plural pronouns "we" and "our" are used. Except by inference, it does not even appear that the Treasury attaché who signed the report was the person, or one of the persons, who made the investigation.

In rounding out the picture of market conditions in Seto at or about the time of exportation here involved, Mr. White testified that others bought merchandise of the character of that here in issue in Seto under similar circumstances, and named five buyers for American import houses whom he met from time to time in Seto, and who, so far as he was able to see, conducted their business in a similar manner. His testimony also establishes that at or about the time of exportation Nagoya was a principal place in Japan where commissionaires, or so-called buying agents, for the type of merchandise here involved had their places of business and warehouses.

The latter had multiple functions, among which were to canvass or survey the market in Seto of novelty items and in many cases to have a sample available of new items for consideration by the buyer, to act as interpreters, to inspect the goods before exportation, and to carry out the instructions of the buyers as to exportation from Japan, for all of which services the said commissionaires or buying agents received a fee of 5 per centum of the cost of the goods in their condition as received in Nagoya.

Mr. White testified that after he and the manufacturer arrived at a price in the manner detailed in the foregoing excerpts from his testimony, he wrote an order for the commissionaire which set forth the price of the goods including freight from Seto to Nagoya, as well as export packing. The commissionaire would thereupon write the order to the manufacturer at the same price. In fulfillment of the order, the goods would be delivered to the commissionaire's warehouse in Nagoya in export cases but in such manner, i. e., with the tops not nailed down, that the commissionaire could inspect as much of the goods as necessary to satisfy himself that the order had been properly fulfilled, add extra packing, if necessary, close up the cases, and arrange for the exportation of the goods. Usually the commissionaire would assemble numerous deliveries from various manufacturers and ship them in one export shipment, covered by one invoice.

Before this division much was made by counsel for the appellant of the fact that the 5 per centum fee received by the commissionaire was calculated upon the delivered price to Nagoya, and it is argued that this is strong evidence that that was the price at which the merchandise was actually sold.

We do not regard this as a necessary inference which must be drawn from the facts, or even a reasonable inference, when all of the circumstances concerning the commissionaire system are considered. The 5 per centum fee (which itself is not a disputed item herein) was evidently based upon the total cost of the goods up to the time they came into the hands of the commissionaire, including the cost of the goods, cartons, cases, and packing, and local freight charges to the point where the commissionaire was located. The basis for the 5 per centum fee seems to have been arrived at by agreement or bargaining between the commissionaires and the importers, who, in previous times paid a higher amount.

We are of the opinion, as was the court below, that it has been established by a preponderance in weight of the evidence that merchandise such as or similar to that here involved was, at the time of exportation thereof from Japan, freely offered for sale for exportation to the United States to all purchasers in the usual wholesale quantities and in the ordinary course of trade at prices which did not include the local freight from Seto to Nagoya. The record clearly shows that

the free offer of the merchandise in Seto was not in any way conditioned upon delivery of the merchandise to Nagoya, and that delivery of the merchandise to a place other than the principal market was effected solely for convenience of the purchaser and his agents. The record therefore establishes facts materially different from those which obtained in the *Zellerbach* and *Heffernan* cases, *supra*, and the decisions in those cases do not control herein.

On the entire record we find as facts:

(1) That the merchandise in question consists of novelty porcelainware exported from Japan during the year 1940.

(2) That at the time of exportation of such merchandise to the United States there was no market value or price at which such or similar merchandise was freely offered for sale for home consumption to all purchasers in the principal markets of Japan, in the usual wholesale quantities and in the ordinary course of trade.

(3) That at the said time of exportation Seto, Japan, was the principal market in Japan in which merchandise such as or similar thereto was freely offered for sale for exportation to the United States.

(4) That at the said time of exportation the market value or price for each of the involved items at which such or similar merchandise was freely offered for sale to all purchasers in Seto, Japan, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, was the appraised value, less the local freight charges from Seto to Nagoya as noted on the invoices.

We conclude as matter of law:

(1) That the proper basis for determining the value of the involved merchandise is export value, as defined in section 402 (d) of the Tariff Act of 1930; and

(2) That such value in each instance was the appraised value, less the local freight charges from Seto to ·Nagoya as noted on the invoices.

Judgment will therefore issue affirming the decision and judgment of the single judge.