(R.D. 11679)

BYRON EUGENE MILLER FOR EAGLE TECHNICAL CO. *v.* UNITED STATES

Entry No. 3165D, etc.

(Decided October 6, 1969)

*Byron Eugene Miller* appearing *pro se.*

*William D. Ruckelshaus*, Assistant Attorney General (*Robert Blanc*, trial attorney), for the defendant.

NEWMAN, Judge: These twenty-three consolidated appeals for reappraisement involve various surveying instruments, parts thereof, and carrying cases which were exported from Japan during the period from November 1963 to April 1967.

The merchandise was appraised on the basis of export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, in the following manner: In most of the appeals, the appraisements were made at invoiced until f.o.b. values, net, packed. The invoices specify that the following charges were included in the f.o.b. prices: case and packing charges, freight, insurance premium, hauling and lighterage, storage, and petties. In reappraisement R67/13589, the appraisement was at invoiced unit ex-factory values, plus prorated portions of certain items marked "X" net, plus packing. In reappraisement R67/19515, the merchandise was appraised at invoiced unit ex-factory values plus prorated portions of items marked "Z," packed. Items marked "X" and "Z" by the appraiser cover various "costs from ex-factory to on board," which include "case and packing charge," inland freight, insurance, storage, hauling and lighterage, petties, and "custom clearance."

Plaintiff does not dispute that the proper basis of appraisement is export value, but contends that the appraised values should not include the costs or expenses incurred in getting the merchandise from the sellers' factories to on-board the ship. In essence, it is plaintiff's claim that he purchased the involved goods at ex-factory prices and they should be appraised accordingly. Defendant's basic contention is that plaintiff's evidence fails to establish a *prima facie* case which overcomes the presumptively correct f.o.b. values found by the appraising officer.

For the reasons which appear below, the court sustains the appraised values in those cases in which the merchandise was appraised

at the invoiced unit f.o.b. values, net, packed; and sustains plaintiff's claimed ex-factory values in reappraisements R67/13589 and R67/19515. An examination of the official court papers in reappraisement R67/19514 discloses that the appraisement was made on August 28, 1967 and the appeal was filed on August 16, 1967. Accordingly, that appeal is dismissed as prematurely filed. *Wilmington Shipping Co.* v. *United States*, 52 CCPA 89, C.A.D. 864 (1965).

Export value and the terms therein are, in pertinent part, defined in section 402, as amended, as follows:

> (b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar marchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.
>
> \*     \*     \*     \*     \*     \*     \*
>
> (f) DEFINITIONS.—For the purposes of this section—
> (1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales offered—
> > (A) to all purchasers at wholesale, or
> > (B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,
> without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

Also relevant in all appeals for reappraisement is section 2633 of Title 28, United States Code, which provides in pertinent part:

> The value found by the appraiser shall be presumed to be the value of the merchandise. The burden shall rest upon the party which challenges its correctness to prove otherwise.

At the trial, Byron Eugene Miller,[1] appearing *pro se* testified to the following effect:

At the time of the importations covered by these appeals, Mr. Miller was the owner of the Eagle Technical Company, a sole proprietorship. He imported a line of surveying and drafting instruments from various

---

[1] Mr. Miller, a college graduate with supplementary post-graduate work, holds a degree in geophysical engineering.

manufacturers in Japan and Italy and also purchased such items in the United States. The merchandise was sold to dealers, mainly blueprinters and instrument repair shops. At the time of the trial, Miller no longer owned the Eagle Technical Company, inasmuch as it had been sold to others.

When Mr. Miller first purchased instruments in Japan in 1955, sales were made to him on an f.o.b. Japanese port basis. At that time he was not familiar with the tariff significance of f.o.b. transactions; but about 1957 or 1958 Miller's customhouse broker advised him that he could save customs duties if he bought the merchandise from the Japanese manufacturers on an f.o.b. factory basis. When questioned by the court as to what he understood by the term "f.o.b. factory basis," Mr. Miller stated he understood such term to mean that "you buy at the factory" and pay any additional charges to get the shipment from the factory to the port (R. 11). On one of his trips to Japan, Mr. Miller brought up this matter with the manufacturers, and in some instances came to a written agreement with them. Accordingly, a letter was sent by the manufacturers to the collector of customs in Dallas, stating that they were selling the instruments on an ex-factory basis. Mr. Miller introduced in evidence, as plaintiff's exhibit 6, a letter dated January 17, 1962, from the deputy appraiser at the port of Dallas, Texas, to Texas-Asiatic Import Co., which states *inter alia* that Tokyo Sokki Co., Ltd., and Zuiho Optical Instrument Co., Ltd., had been placed on the appraiser's list of manufacturers for ex-factory appraisement effective January 2, 1962.

Mr. Miller introduced, as plaintiff's exhibit 1, a letter dated October 2, 1964 from Tokyo Sokki Co., Ltd., to Texas-Asiatic Import Co., in which the former offered to sell the latter 56 sets of #181 Dumpy Levels at a net price, packed, of $81.50 per set, exclusive of shipping and "ex-factory charges." Additionally, Mr. Miller testified that exhibit 1 was not the earliest price quotation on an ex-factory basis that he had from Tokyo Sokki. He explained that it was not until about the year 1963 that any question arose concerning whether he was purchasing on an ex-factory or f.o.b. basis, and that most of his files containing price quotations on an ex-factory basis going back to 1957 and 1958 had been disposed of. When questioned by the court as to the prices that he had paid for certain merchandise, Miller stated there were various items and prices, but he could not testify as to the exact prices.

Rather than testify with respect to each entry, Mr. Miller selected reappraisement R67/19514 (by consent) as being typical of all the others. That appeal covers #181 Dumpy Levels and spare parts. Miller tried to correlate exhibit 1 with the invoice covered by reappraisement R67/19514. However, exhibit 1 showed a price of $81.50 for the #181 Dumpy Levels, while Mr. Miller stated that he had paid only $81.18 for

them. He had no explanation (at the trial) for the difference in prices and did not know how the price of $81.18 had been arrived at by the manufacturer. (Parenthetically, Mr. Miller's brief explains this differential—but, of course, that explanation is not part of the record. See R.69. And, in any event, such explanation would not change the conclusion the court has reached.)

Mr. Miller further testified that in addition to the ex-factory price of $81.18 that he had paid for each of the Dumpy Levels, duty was charged on an additional amount of $71.64 added to total ex-factory price which covered charges for freight from the factory to the shipping port, insurance, storage, hauling, and lighterage.

According to Miller, plaintiff's exhibit 3 is a sales acceptance from Tokyo Sokki Co., Ltd. that was executed about two years prior to the representative shipment (reappraisement R67/19514) and shows the price of the #181 Dumpy Level as being $67.00 plus cases and packing charges, inland freight, insurance, storage, hauling and lighterage not to exceed $100.00. Mr. Miller urged that it could be inferred that the price of $67.00 was ex-factory from the fact that the invoice shows the other charges as being additional, and the words "FOB Japan" could refer to any place in Japan.

Plaintiff also introduced in evidence, as plaintiff's exhibits 4 and 5, two letters of credit covering #181 Dumpy Levels.

Defendant called as its witness Weldon I. Bailey, Supervisory Import Specialist at the port of Dallas, who made advisory appraisements in some of the entries involved in these appeals. Mr. Bailey's testimony reveals that the instruments exported by Zuiho and Tokyo Sokki Co. were at one time appraised on an ex-factory basis, but that practice was discontinued as a result of receiving a report from a customs representative in Japan, introduced in evidence as defendant's exhibit A. The report states, among other things, that Zuiho and Tokyo Sokki Co. sold exclusively at f.o.b. prices, and that the case and packing charges and the various inland charges shown on their invoices were always estimated.

Apparently for the reason that plaintiff is not a lawyer and was not represented by an attorney, Government counsel deemed it appropriate to forbear interposing technical evidentiary objections at the trial. Thus, Mr. Miller was permitted to place on the record any facts, statements, or documents which he wished the court to consider in arriving at its determination. However, in its brief, defendant hits hard at what it considers to be plaintiff's failure to offer the necessary proof required by the statute to establish the various elements of export value.

At the outset, it should be noted that the court is favorably impressed by the candor and apparent truthfulness of Mr. Miller's testimony and the sincerity of his contentions. However, the legal aspects of customs

valuation are extremely technical and place a difficult burden on any plaintiff who desires to judicially overturn the presumptively correct values determined by the appraiser. *Bud Berman Sportswear, Inc.* v. *United States*, 55 Cust. Ct. 574, 585, R.D. 11056 (1965), *aff'd* 57 Cust. Ct. 733, A.R.D. 211 (1966), *aff'd* 55 CCPA 28, C.A.D. 929 (1967). See also *J. E. Bernard & Co., Inc.* v. *United States*, 58 Cust. Ct. 598, 602, R.D. 11265 (1967). The court, of course, is obliged to decide the issues in this case solely on the basis of whether the evidence presented suffices to sustain the burden of proof thrust upon plaintiff by the statutory provisions applicable herein. Since plaintiff's burden of proof in those appeals involving appraisements at invoice unit f.o.b. values differs from that in reappraisements R67/13589 and R67/19515, the court shall first proceed to consider the former group of cases.

It is apparent from the statutory definition of export value that to sustain his burden of proof it was essential for plaintiff to establish every material element included in the statutory definition. Hence, plaintiff could not succeed unless he had established evidentiary facts from which the court could find that such or similar merchandise was freely sold, or in the absence of sales, freely offered for sale, to all purchasers in the principal markets of the country of exportation in the usual wholesale quantities and in the ordinary course of trade, at the claimed values. The conclusion is inescapable that plaintiff has not proven the statutory requirements. There is not a scintilla of evidence bearing upon the usual wholesale quantities, the ordinary course of trade, or the principal markets in Japan. Moreover, no evidence, by affidavit or otherwise, was presented from the Japanese manufacturers relative to the price at which the merchandise was freely sold to all purchasers at wholesale. Nor did plaintiff attempt to establish that he was a "selected purchaser" and that the claimed ex-factory prices fairly reflected the market value of the merchandise, in accordance with section 402(f) (1) (B).[2] Plaintiff's proofs establish only that he purchased the merchandise on an ex-factory basis. (The court wishes to emphasize that it has carefully scrutinized plaintiff's invoices and other documentary exhibits.)

---

[2] Under section 402(b) and 402(f) (1) (B) of the Tariff Act of 1930, as amended, export value may be determined from the price at which the merchandise is freely sold, or, in the absence of sales, offered for sale in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise. A "selected purchaser" within the purview of section 402(f) (1) (B) is one particularly designated by the seller and to whom the seller restricts the sale of its merchandise. *Aceto Chemical Co., Inc.* v. *United States*, 51 CCPA 121, C.A.D. 846 (1964); *Haddad & Sons Inc.* v. *United States*, 54 Cust. Ct. 600, R.D. 10942 (1965), *aff'd* 56 Cust. Ct. 792, A.R.D. 205 (1966). In this connection, the court has noted that defendant's exhibit A states that both Zuiho Optical Instrument Co., Ltd. and Tokyo Sokki Co., Ltd. restricted their sales of surveying instruments to Texas-Asiatic Import Co.

Faced with the foregoing deficiencies in plaintiff's proof, the court has no alternative except to find that in the first group of cases plaintiff has not made out a *prima facie* case, and the f.o.b. values determined by the appraiser must be sustained. *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502 (1952) ; *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593 (1955).

Finally, the court considers reappraisements R67/13589 and R67/19515, covering shipments by Zuiho on February 21, 1966 and June 16, 1966 respectively, wherein, as stated above, the merchandise was appraised at ex-factory prices plus items marked "X" or "Z."

In *United States* v. *Chadwick-Miller Importers, Inc., et al.,* 54 CCPA 93, C.A.D. 914 (1967), the appellate court held that where an appraisement is stated in terms of an ex-factory price plus disputed charges, the appraisement is considered separable, and the party challenging the appraiser's return may rely upon the presumption of correctness as to all elements of the appraisement which he does not seek to dispute. See also *United States* v. *Bud Berman Sportswear, Inc.,* 55 CCPA 28, C.A.D. 929 (1967).

The appraisements in the first group of appeals considered above, made at unit f.o.b. values, net, packed, are not those which conform to the principle of separability as enunciated in *Chadwick-Miller, supra.* But, in this second group of two appeals, the appraisements are clearly separable since they are the very type discussed in *Chadwick-Miller.* Thus, plaintiff is permitted to challenge the propriety of the appraiser's adding the "costs from ex-factory to on board," and at the same time rely upon the presumption of correctness attaching to the unchallenged ex-factory prices. As stated above, plaintiff's evidence shows that he purchased the imported merchandise on an ex-factory basis.

Defendant contends, however, that its exhibit A shows that the Japanese manufacturers sold exclusively on an f.o.b. basis, and that they estimated the case and packing charges and the various inland charges shown on the invoices.

Although reports of customs agents may be admitted in evidence in reappraisement cases by virtue of statutory authority, 28 U.S.C. § 2633, the weight to be given such reports is a matter exclusively for the trial court's determination. *T. D. Downing & Co. et al.* v. *United States*, 16 Ct. Cust. Appls. 293, T.D. 42873 (1928). In connection with the weight and probative value of exhibit A, the court has noted that the report is dated November 21, 1962 and covers the result of interviews at Zuiho on November 15, 1962 and at Tokyo Sokki on November 19, 1962. The earliest of the shipments covered by any of these appeals was November 21, 1963, a year later, and the two Zuiho shipments now being discussed were in 1966. Because of the remoteness in time of defend-

ant's exhibit A, the court will attach little weight or probative value to the contents of such exhibit. *William Shaland* v. *United States*, 26 Cust. Ct. 481, R.D. 7926 (1951), *aff'd* 30 Cust. Ct. 575, A.R.D. 12 (1953); *Stern & Herff Corp.* v. *United States*, 20 Cust. Ct. 346, R.D. 7500 (1948), *aff'd* 22 Cust. Ct. 351, R.D. 7638 (1948); *Crafts of the World* v. *United States*, 16 Cust. Ct. 315, R.D. 6249 (1946); *United States* v. *Blefeld & Goodfriend, Inc.*, 1 Cust. Ct. 668, R.D. 4416 (1938).

An additional factor which has been noted in defendant's exhibit A is the lack of disclosure of the position or authority of Mr. Sakai, who was interviewed by the customs agent at Zuiho, or any facts which would establish his personal knowledge of the information given to the agent. Mr. Sakai may well have been a clerical employee lacking any personal knowledge, as persuasively suggested by plaintiff in his brief (page 2).

Mr. Miller, who actually purchased the instruments in Japan, testified under oath and subject to cross-examination, how the transactions were consummated. In the court's opinion, Mr. Miller's testimony establishes that he purchased this merchandise on an ex-factory basis. Such being the case, the inland charges itemized on the invoices and designated by the appraiser by the letters "X" or "Z" were not part of the export value. Thus, the deficiency in plaintiff's proof in those cases in which the merchandise was appraised at f.o.b. unit values is supplied in the two cases involving separable appraisements by the presumption of correctness attaching to the unchallenged portion of the appraisements. *Chadwick-Miller, Bud Berman, supra.*

By reason of the record and foregoing observations, the court makes the following findings of facts:

1. The merchandise covered by these twenty-three consolidated appeals for reappraisement consists of surveying instruments, parts thereof, and carrying cases exported from Japan during the period from November 21, 1963 to April 17, 1967.

2. The basis of appraisement was export value, as such value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

3. The merchandise is not included on the Final List, published by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521.

4. In all appeals except reappraisements R67/13589 and R67/19515, the merchandise was appraised at the invoiced unit f.o.b. port of exportation prices, net, packed.

5. In reappraisements R67/13589 and R67/19515, the merchandise was appraised at the invoiced ex-factory prices plus prorated portions of invoiced items designated with the letters "X" or "Z".

6. In those appeals where the merchandise was appraised at the invoiced unit f.o.b. port of exportation prices, net, packed, the record

lacks adequate proof to show that on or about the dates of exportation such or similar merchandise was freely sold or, in the absence of sales, offered for sale, in the principal markets of Japan, to all purchasers in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States at prices other than the appraised values.

7. The record does not establish that at the dates of exportation plaintiff was a selected purchaser within the meaning of section 402 (f) (1) (B), Tariff Act of 1930, as amended.

8. The record establishes that plaintiff purchased the involved merchandise on an ex-factory basis.

9. The official court papers show that the appraisement in reappraisement R67/19514 was made on August 28, 1967, and that the appeal for reappraisement was filed on August 16, 1967.

The court concludes as matters of law:

1. Export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of values of the merchandise involved herein.

2. In those appeals wherein the merchandise was appraised at the invoiced unit f.o.b. prices, net, packed, the export values are the appraised values.

3. In view of the fact that the appraiser made his appraisements in reappraisements R67/13589 and R67/19515 by adding certain invoiced charges to the ex-factory prices, the appraisements are deemed separable, and plaintiff's burden of proof was limited to showing that he purchased the merchandise on an ex-factory basis.

4. Plaintiff has sustained his burden of showing that he purchased on an ex-factory basis.

5. In reappraisements R67/13589 and R67/19515, the export values are the invoiced unit ex-factory prices, plus packing, exclusive of any other charges over and above said ex-factory prices.

6. Reappraisement appeal R67/19514 was prematurely filed and is therefore dismissed.

Judgment will be entered accordingly.